## LORILLARD, A DIVISION OF LOEW'S THEATRES, INC. *v.* PONS

No. 76–1346.   Argued December 6, 1977—Decided February 22, 1978

*Thornton H. Brooks* argued the cause for petitioner. With him on the brief was *M. Daniel McGinn*.

*Norman B. Smith* argued the cause and filed a brief for respondent.[*]

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the question whether there is a right to a jury trial in private civil actions for lost wages under the Age Discrimination in Employment Act of 1967 (ADEA or Act), 81 Stat. 602, as amended, 88 Stat. 74, 29 U. S. C. § 621 *et seq.* (1970 ed. and Supp. V). Respondent commenced this action against petitioner, her former employer, alleging that she had been discharged because of her age in violation of the ADEA. She sought reinstatement, lost wages, liquidated damages, attorney's fees, and costs. Respondent demanded a jury trial on all issues of fact; petitioner moved to strike the demand. The District Court granted the motion to strike but certified the issue for interlocutory appeal pursuant to 28 U. S. C. § 1292 (b). The United States Court of Appeals for the Fourth Circuit allowed the appeal and vacated the trial court's order, ruling that the ADEA and the Seventh Amendment[1]

---

[*]*Robert E. Williams* and *Frank C. Morris, Jr.,* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

*Jonathan A. Weiss* filed a brief for Legal Services for the Elderly Poor as *amicus curiae* urging affirmance.

[1] Judge Butzner filed an opinion concurring specially. Since he agreed with the court that the statute entitled respondent to a jury trial, he found no occasion to address the constitutional issue. 549 F. 2d 950, 954 (1977).

afford respondent the right to a jury trial on her claim for lost wages, 549 F. 2d 950, 952–953 (1977).[2]  We granted certiorari, 433 U. S. 907 (1977), to resolve the conflict in the Circuits[3] on this important issue in the administration of the ADEA.  We now affirm.

## I

The ADEA broadly prohibits arbitrary discrimination in the workplace based on age.  § 4 (a), 29 U. S. C. § 623 (a).  Although the ADEA contains no provision expressly granting a right to jury trial, respondent nonetheless contends that the structure of the Act demonstrates a congressional intent to grant such a right.  Alternatively, she argues that the Seventh Amendment requires that in a private action for lost wages under the ADEA, the parties must be given the option of having the case heard by a jury.  We turn first to the statutory question since " 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.' "  *United States* v. *Thirty-seven Photographs,* 402 U. S. 363, 369 (1971), quoting *Crowell* v. *Benson,* 285 U. S. 22, 62 (1932).  Accord, *Pernell* v. *Southall Realty,* 416 U. S. 363, 365 (1974).  Because we find the statutory issue dispositive, we need not address the constitutional issue.

The enforcement scheme for the statute is complex—the product of considerable attention during the legislative debates

---

[2] The Court of Appeals did not decide whether respondent was entitled to a jury trial on her claim for liquidated damages because according to the District Court opinion, respondent had "conceded that the liquidated damages issue would not be triable to a jury." 69 F. R. D. 576 n. 2 (1976). We express no view on the issue of the right to jury trial on a liquidated damages claim.

[3] *Morelock* v. *NCR Corp.,* 546 F. 2d 682 (CA6 1976) (no right to jury trial), cert. pending, No. 77–172; *Rogers* v. *Exxon Research & Engineering Co.,* 550 F. 2d 834 (CA3 1977) (right to jury trial), cert. denied, *post,* p. 1022.

preceding passage of the Act. Several alternative proposals were considered by Congress. The Administration submitted a bill, modeled after §§ 10 (c), (e) of the National Labor Relations Act, 29 U. S. C. §§ 160 (c), (e), which would have granted power to the Secretary of Labor to issue cease-and-desist orders enforceable in the courts of appeals, but would not have granted a private right of action to aggrieved individuals, S. 830, H. R. 4221, 90th Cong., 1st Sess. (1967). Senator Javits introduced an alternative proposal to make discrimination based on age unlawful under the Fair Labor Standards Act (FLSA), 29 U. S. C. § 201 *et seq.;* the normal enforcement provisions of the FLSA, 29 U. S. C. § 216 *et seq.* (1970 ed. and Supp. V), then would have been applicable, permitting suits by either the Secretary of Labor or the injured individual, S. 788, 90th Cong., 1st Sess. (1967). A third alternative that was considered would have adopted the statutory pattern of Title VII of the Civil Rights Act of 1964 and utilized the Equal Employment Opportunity Commission. 42 U. S. C. §§ 2000e–4, 2000e–5 (1970 ed. and Supp. V).

The bill that was ultimately enacted is something of a hybrid, reflecting, on the one hand, Congress' desire to use an existing statutory scheme and a bureaucracy with which employers and employees would be familiar and, on the other hand, its dissatisfaction with some elements of each of the pre-existing schemes.[4] Pursuant to § 7 (b) of the Act, 29 U. S. C. § 626 (b), violations of the ADEA generally are to be treated as violations of the FLSA. "Amounts owing . . . as a result of a violation" of the ADEA are to be treated as "unpaid minimum

---

[4] Hearings on S. 830, S. 788 before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 90th Cong., 1st Sess., 24 (1967) (remarks of Sen. Javits); *id.,* at 29 (remarks of Sen. Smathers); *id.,* at 396 (statement of National Retail Merchants Assn.). Hearings on H. R. 3651, H. R. 3768, and H. R. 4221 before the General Subcommittee on Labor of the House Committee on Education and Labor, 90th Cong., 1st Sess., 12–13 (1967) (remarks of Secretary of Labor); *id.,* at 413 (statement of Legislative Representative, AFL–CIO).

wages or unpaid overtime compensation" under the FLSA and the rights created by the ADEA are to be "enforced in accordance with the powers, remedies and procedures" of specified sections of the FLSA. 29 U. S. C. § 626 (b).[5]

Following the model of the FLSA, the ADEA establishes two primary enforcement mechanisms. Under the FLSA provisions incorporated in § 7 (b) of the ADEA, 29 U. S. C. § 626 (b), the Secretary of Labor may bring suit on behalf of an aggrieved individual for injunctive and monetary relief. 29 U. S. C. §§ 216 (c), 217 (1970 ed. and Supp. V). The incorporated FLSA provisions together with § 7 (c) of the ADEA, 29 U. S. C. § 626 (c), in addition, authorize private civil actions for "such legal or equitable relief as will effectuate the purposes of" the ADEA.[6] Although not required by the

---

[5] Section 7 (b), as set forth in 29 U. S. C. § 626 (b), provides:

"The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211 (b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section. Before instituting any action under this section, the Secretary shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion."

[6] Section 7 (c), as set forth in 29 U. S. C. § 626 (c), provides:

"Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring

FLSA, prior to the initiation of any ADEA action, an individual must give notice to the Secretary of Labor of his intention to sue in order that the Secretary can attempt to eliminate the alleged unlawful practice through informal methods. § 7 (d), 29 U. S. C. § 626 (d). After allowing the Secretary 60 days to conciliate the alleged unlawful practice, the individual may file suit. The right of the individual to sue on his own terminates, however, if the Secretary commences an action on his behalf. § 7 (c), 29 U. S. C. § 626 (c).

## II

Looking first to the procedural provisions of the statute, we find a significant indication of Congress' intent in its directive that the ADEA be enforced in accordance with the "powers, remedies, and *procedures*" of the FLSA. § 7 (b), 29 U. S. C. § 626 (b) (emphasis added). Long before Congress enacted the ADEA, it was well established that there was a right to a jury trial in private actions pursuant to the FLSA. Indeed, every court to consider the issue had so held.[7] Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change, see *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, 414 n. 8 (1975); *NLRB* v. *Gullett Gin*

such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter."

[7] See, *e. g., Wirtz* v. *Jones,* 340 F. 2d 901, 904 (CA5 1965); *Lewis* v. *Times Publishing Co.,* 185 F. 2d 457 (CA5 1950); *Olearchick* v. *American Steel Foundries,* 73 F. Supp. 273, 279 (WD Pa. 1947). See also Note, The Right to Jury Trial Under the Age Discrimination in Employment and Fair Labor Standards Acts, 44 U. Chi. L. Rev. 365, 376 (1977); Note, Fair Labor Standards Act and Trial by Jury, 65 Colum. L. Rev. 514 (1965). However, no right to jury trial was recognized in actions brought by the Secretary of Labor enjoining violations of the FLSA and compelling employers to pay unlawfully withheld minimum wages or overtime compensation pursuant to 29 U. S. C. § 217. See, *e. g., Sullivan* v. *Wirtz,* 359 F. 2d 426 (CA5 1966); *Wirtz* v. *Jones, supra.*

*Co.,* 340 U. S. 361, 366 (1951); *National Lead Co.* v. *United States,* 252 U. S. 140, 147 (1920); 2A C. Sands, Sutherland on Statutory Construction § 49.09 and cases cited (4th ed. 1973). So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

That presumption is particularly appropriate here since, in enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation. For example, in construing the enforcement sections of the FLSA, the courts had consistently declared that injunctive relief was not available in suits by private individuals but only in suits by the Secretary. *Powell* v. *Washington Post Co.,* 105 U. S. App. D. C. 374, 267 F. 2d 651 (1959); *Roberg* v. *Henry Phipps Estate,* 156 F. 2d 958, 963 (CA2 1946); *Bowe* v. *Judson C. Burns, Inc.,* 137 F. 2d 37 (CA3 1943). Congress made plain its decision to follow a different course in the ADEA by expressly permitting "such . . . equitable relief as may be appropriate to effectuate the purposes of [the ADEA] including without limitation judgments compelling employment, reinstatement or promotion" "in *any* action brought to enforce" the Act. § 7 (b), 29 U. S. C. § 626 (b) (emphasis added). Similarly, while incorporating into the ADEA the FLSA provisions authorizing awards of liquidated damages, Congress altered the circumstances under which such awards would be available in ADEA actions by mandating that such damages be awarded only where the violation of the ADEA is willful.[8] Finally,

---

[8] By its terms, 29 U. S. C. § 216 (b) requires that liquidated damages be awarded as a matter of right for violations of the FLSA. However, in response to its dissatisfaction with that judicial interpretation of the provision, Congress enacted the Portal-to-Portal Pay Act of 1947, 61 Stat. 84, which, *inter alia,* grants courts authority to deny or limit liquidated damages where the "employer shows to the satisfaction of the court that

Congress expressly declined to incorporate into the ADEA the criminal penalties established for violations of the FLSA.[9]

This selectivity that Congress exhibited in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA. Senator Javits, one of the floor managers of the bill, so indicated in describing the enforcement section which became part of the Act: "The enforcement techniques provided by [the ADEA] are directly analogous to those available under the Fair Labor Standards Act; in fact [the ADEA] incorporates by reference, to the greatest extent possible, the provisions of the [FLSA]." 113 Cong. Rec. 31254 (1967).[10] And by directing that actions for lost wages under the ADEA be treated as actions for unpaid minimum wages or overtime compensation under the FLSA, § 7 (b), 29 U. S. C. § 626 (b), Congress dictated that the jury trial right then available to

the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of" the FLSA, § 11, 29 U. S. C. § 260 (1970 ed., Supp. V). Although § 7 (e) of the ADEA, 29 U. S. C. § 626 (e), expressly incorporates §§ 6 and 10 of the Portal-to-Portal Pay Act, 29 U. S. C. §§ 255 and 259 (1970 ed. and Supp. V), the ADEA does not make any reference to § 11, 29 U. S. C. § 260 (1970 ed., Supp. V).

[9] Section 10 of the ADEA, 29 U. S. C. § 629, establishes criminal penalties for interference with the performance of an authorized representative of the Secretary when he is engaged in the performance of his duties under the Act. Cf. 29 U. S. C. § 216 (a).

[10] Senator Javits made the only specific reference in the legislative history to a jury trial. He said:

"The whole test is somewhat like the test in an accident case—did the person use reasonable care. A jury will answer yes or no. The question here is: Was the individual discriminated against solely because of his age? The alleged discrimination must be proved and the burden of proof is upon the one who would assert that that was actually the case." 113 Cong. Rec. 31255 (1967).

It is difficult to tell whether Senator Javits was referring to the issue in ADEA cases or in accident cases when he said the jury will say yes or no.

enforce that FLSA liability would also be available in private actions under the ADEA.

This inference is buttressed by an examination of the language Congress chose to describe the available remedies under the ADEA. Section 7 (b), 29 U. S. C. § 626 (b), empowers a court to grant *"legal* or equitable relief" and § 7 (c), 29 U. S. C. § 626 (c), authorizes individuals to bring actions for *"legal* or equitable relief" (emphases added). The word "legal" is a term of art: In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial. See *Curtis* v. *Loether,* 415 U. S. 189, 195–196 (1974). "[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil* v. *United States,* 221 U. S. 1, 59 (1911). See *Gilbert* v. *United States,* 370 U. S. 650, 655 (1962); *Montclair* v. *Ramsdell,* 107 U. S. 147, 152 (1883). We can infer, therefore, that by providing specifically for "legal" relief, Congress knew the significance of the term "legal," and intended that there would be a jury trial on demand to "enforc[e] . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation." § 7 (b), 29 U. S. C. § 626 (b).[11]

Petitioner strives to find a contrary congressional intent by comparing the ADEA with Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.* (1970 ed. and Supp. V), which petitioner maintains does not provide for jury trials. We, of course, intimate no view as to whether a jury trial is

---

[11] Section 7 (b), 29 U. S. C. § 626 (b), does not specify which of the listed categories of relief are legal and which are equitable. However, since it is clear that judgments compelling "employment, reinstatement or promotion" are equitable, see 5 J. Moore, Federal Practice ¶ 38.21 (1977), Congress must have meant the phrase "legal relief" to refer to judgments "enforcing . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation."

available under Title VII as a matter of either statutory or constitutional right. See *Curtis* v. *Loether, supra,* at 197. However, after examining the provisions of Title VII, we find petitioner's argument by analogy to Title VII unavailing. There are important similarities between the two statutes, to be sure, both in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions. In fact, the prohibitions of the ADEA were derived *in haec verba* from Title VII.[12]  But in deciding whether a statutory right to jury trial exists, it is the remedial and procedural provisions of the two laws that are crucial and there we find significant differences.

Looking first to the statutory language defining the relief available, we note that Congress specifically provided for both "legal or equitable relief" in the ADEA, but did not authorize "legal" relief in so many words under Title VII.  Compare § 7 (b), 29 U. S. C. § 626 (b), with 42 U. S. C. § 2000e–5 (g) (1970 ed., Supp. V).  Similarly, the ADEA incorporates the FLSA provision that employers "shall be liable" for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of backpay is a matter of equitable discretion, see *Albemarle Paper Co.* v. *Moody,* 422 U. S., at 421.[13]  Finally, rather than adopting the procedures of Title VII for ADEA actions, Congress rejected that course

[12] Title VII with respect to race, color, religion, sex, or national origin, and the ADEA with respect to age make it unlawful for an employer "to fail or refuse to hire or to discharge any individual," or otherwise to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," on any of those bases.  42 U. S. C. § 2000e–2 (a) (1); 29 U. S. C. § 623 (a) (1).  Compare 42 U. S. C. § 2000e–2 (a) (2) (1970 ed., Supp. V) with 29 U. S. C. § 623 (a) (2).

[13] Although we have held that the discretionary power to deny backpay should be used only where to do so "would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination," *Albemarle Paper Co.* v. *Moody,* 422 U. S., at 421, we nonetheless have recognized that under Title VII some discretion exists.

in favor of incorporating the FLSA procedures even while adopting Title VII's substantive prohibitions. Thus, even if petitioner is correct that Congress did not intend there to be jury trials under Title VII, that fact sheds no light on congressional intent under the ADEA. Petitioner's reliance on Title VII, therefore, is misplaced.[14]

We are not unmindful of the difficulty of discerning congressional intent where the statute provides no express answer. However, we cannot assume, in the face of Congress' extensive knowledge of the operation of the FLSA, illustrated by its selective incorporation and amendment of the FLSA provisions for the ADEA, that Congress was unaware that courts had uniformly afforded jury trials under the FLSA. Nor can we believe that in using the word "legal," Congress was oblivious to its long-established meaning or its significance. We are therefore persuaded that Congress intended that in a private action under the ADEA a trial by jury would be available where sought by one of the parties. The judgment of the Court of Appeals is, accordingly,

*Affirmed.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

---

[14] Indeed, to the extent petitioner correctly interprets congressional intent with respect to jury trials under Title VII, the very different remedial and procedural provisions under the ADEA suggest that Congress had a very different intent in mind in drafting the later law.