Francis X. CLEARY, Appellant,

v.

UNITED STATES LINES, INC. and United States Lines Operations, Inc., Appellees.

No. 83–5158.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1983.

Decided March 5, 1984.

Steven P. Kartzman (argued), Bourne, Noll & Kenyon, P.A., Summit, N.J., for appellant.

John N. Malyska (argued), Geralyn A. Boccher, Meyner & Landis, Newark, N.J., for appellees.

Robert E. Williams, Douglas S. McDowell, Edward E. Potter, Barbara L. Neilson, McGuiness & Williams, Washington, D.C., for amicus curiae Equal Employment Advisory Council.

Before SEITZ, Chief Judge, GARTH and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal concerns the extraterritorial effect of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"). Appellant Francis Cleary, an American citizen employed for many years in England by United States Lines Operations, Inc. ("Operations") brought suit against Operations and its parent corporation, United States Lines, Inc. ("USL"), alleging that they discharged him because of his age, sixty-four, in violation of the ADEA. The district court granted the defendants' motions for summary judgment, 555 F.Supp. 1251, concluding that the geographic scope of the ADEA was limited to the United States; that appellant's place of employment was outside of the United States, and that therefore the ADEA did not apply to him. We affirm.

I.

Appellant was first employed by USL in 1946 and worked for either USL or Operations for the next thirty-three years.[1] Be-

---

**1.** We state the facts in brief. A fuller statement of the facts may be found in the district

ginning in 1956, appellant was employed full time in Europe[2] by either USL or Operations, and from 1967 until his termination he was employed by Operations in London, England. On June 18, 1979, appellant was informed that his employment was being terminated, effective June 22, 1979. After his termination, appellant was first told that his job was being eliminated in a structural reorganization. Later he was told that his job performance was not up to company standards. In appellant's submission, both of these justifications were pretextual.[3]

Appellant filed an age discrimination claim with the EEOC on November 29, 1979. On May 14, 1980, the EEOC informed him that it had been unable to obtain a satisfactory conciliation agreement with USL and issued a letter authorizing appellant to pursue his other legal remedies.[4] Appellant brought a timely suit in the District Court for the District of New Jersey. Operations and USL moved for summary judgment on the grounds that the ADEA did not apply to persons employed outside the United States. Rejecting appellant's arguments in favor of extra-territorial application, the district court in a careful and comprehensive opinion granted summary judgment for Operations and USL. The court held that, because the ADEA incorporates the enforcement provisions of the Fair Labor Standards Act ("FLSA"), and because the relevant provisions of the FLSA provide that the act shall not apply to any

person who is employed in a workplace outside the United States, Congress did not intend the ADEA to apply overseas. This appeal followed.

## II.

Section 7 of the ADEA, 29 U.S.C. § 626, provides that "[t]he provisions of this chapter [the ADEA] shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subdivision (a) thereof) and 217 of this title...." The provisions referenced are part of the FLSA. Section 16(d), 29 U.S.C. § 216(d), provides that "no employer shall be subject to any liability or punishment ... on account of his failure to comply with any provision of such Acts (1) with respect to work ... performed in a workplace to which the exception in section 13(f) of this title is applicable." Section 13(f), 29 U.S.C. § 213(f), in turn provides that the acts covered by it shall not apply "to any employee whose services during the workweek are performed in a workplace within a foreign country...."

In *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), the Supreme Court addressed the question of how to interpret the ADEA's provision incorporating the FLSA. The Court stated:

Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without

court opinion, which is reported at 555 F.Supp. 1251 (D.N.J.1983).

2. USL and Operations have a total of 350 employees in Europe, eleven of whom are Americans.

3. Following his termination, a dispute arose between appellant and Operations concerning appellant's entitlement to severance pay and relocation expenses. When no satisfactory agreement could be reached, appellant filed a suit with the London Industrial Tribunal. A settlement agreement was entered into on January 28, 1980, which covered all "claims which [appellant] could have brought in the United Kingdom against [Operations] arising under the terms of his contract of employment or out of his dismissal." There is no remedy for age

discrimination in the United Kingdom, and appellant asserts that the limitation of the settlement to claims that could have been brought in the United Kingdom was designed to preserve his ADEA claims in the United States.

4. Appellant was instructed to file an age discrimination complaint with the New Jersey Division on Civil Rights. Such a complaint had already been filed on November 28, 1979. On July 23, 1980, the Division informed appellant that it had no jurisdiction over his complaint, since USL had been located in New York at the time the decision to dismiss appellant was made. Subsequent to the filing of the complaint in this case, appellant filed an age discrimination charge with the New York State Division on Human Rights, which was dismissed as untimely.

change.... So too, where, as here, Congress adopts new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

That presumption is particularly appropriate here since, in enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation ...

This selectivity that Congress exhibited in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA.

434 U.S. at 580–82, 98 S.Ct. at 869–71. As we have noted, section 213(f), which prohibits extra-territorial application, is explicitly referenced by one of the provisions of the FLSA incorporated into the ADEA, section 216(d). In incorporating section 216 into the ADEA, Congress specifically excluded subsection (a), which provides criminal penalties for the violation of the FLSA. Subsection (d) of the same section, the purpose of which is to exclude liability with respect to employees employed outside of the United States, was not exempted. In deciding whether Congress was "inadvertent" in not excluding subsection (d) when it incorporated section 216, the *Lorillard* presumption of awareness would seem particularly appropriate in light of Congress' selective incorporation of the provisions of section 216.

Appellant advances a number of reasons for not applying the provision against extra-territorial application of the ADEA. *See infra* note 6. However, his principal

argument is that the ADEA only incorporated the "procedural" provisions of the FLSA, while its "substantive" provisions are modeled on Title VII of the 1964 Civil Rights Act. Since the decision whether to apply the ADEA outside of the United States affects the rights of members of the protected class to recover, appellant asserts that it is a "substantive" provision, and that therefore we should look to Title VII, rather than to the FLSA, to decide whether to apply the ADEA in this case.

While there are several weaknesses in this argument, the principal problem is that the language relied on by those courts that have applied Title VII extra-territorially is not present in the ADEA.[5] 42 U.S.C. § 2000e–1 provides:

This subchapter shall not apply to an employer with respect to the employment of *aliens outside any state....*

Some courts have read this language to mean that Title VII does apply to *citizens* employed outside any state. *See Bryant v. International Schools Service, Inc.,* 502 F.Supp. 472, 482 (D.N.J.1980), *rev'd on other grounds,* 675 F.2d 562 (3d Cir.1982). The propriety of this negative inference aside, the relevant language does not appear in the ADEA. Instead, a provision *against* extra-territorial application found in section 213(f) is incorporated. Appellant asks us, in effect, to read section 213(f) out of the ADEA, to read in the relevant language from section 2000e–1, and then to apply a negative inference to that language. In the face of the general policy against extra-territorial application of labor laws, *see McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 21–22, 83 S.Ct. 671, 677–78, 9 L.Ed.2d 547 (1963); *Foley Bros., Inc. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949), and the specific directive of the Supreme Court in *Lorillard* to presume that Congress knew

---

**5.** We also do not believe that the history of the substance/procedure distinction recommends itself to use as a basis for ignoring the explicit incorporation of section 213(f). The federal courts have had a checkered history of dealing with this distinction in determining the relative domains of the Federal Rules of Civil Procedure and of the state laws made applicable in diversity cases by *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See generally* C.A. Wright, *Law of the Federal Courts* 271–273 (3d ed. 1976) (discussing the substance/procedure dichotomy in the *Erie* context); Burbank, *The Rules Enabling Act of 1934,* 130 U.Pa.L.Rev. 1015 (1982).

what it was doing in selectively incorporating some sections of the FLSA into the ADEA, we decline to engage in the statutory re-drafting that appellant urges upon us.[6] At the very least, we would need more affirmative evidence of a congressional intent than appellant has given us to overcome the *Lorillard* presumption.

Appellant also urges us to extend the application of the ADEA to further its policy of deterring discrimination. The district court stated that "[t]here is no valid policy reason why this country's laws against age discrimination should not apply to American citizens employed by American companies abroad." 555 F.Supp. at 1263. While we decline to make a policy judgment, we note the existence of countervailing policy considerations, such as those considerations of international comity that underlie the policy against extraterritorial application of labor laws. *See* text *supra.* In any event, we agree with the district court that these policy arguments are matter for the Congress to consider, not this court.

In sum, we hold that the ADEA does not apply to Americans employed outside the United States by American employers. The judgment of the district court will be affirmed.

---

**6.** Appellant advanced several other arguments in support of his position, all of which were rejected by the district court. Appellant argued that the use of the phrase "the existence in industries affecting *commerce,* of arbitrary discrimination in employment because of age, burdens *commerce* and the free flow of goods in *commerce,*" 29 U.S.C. § 621(a)(4) (emphasis added), indicated that Congress intended that the ADEA reach to the full extent of its constitutional power under the commerce clause. The district court pointed to the similar use of the commerce language in the FLSA in reasoning that the use of that language was not inconsistent with the territorial restriction of section 213(f). We agree with the district court on this point.

Appellant also argues that the courts should follow the general rule of deferring to the interpretation that an agency charged with enforcement has given to a statute, *see, e.g., New York*

*State Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973), and that in this case the relevant agencies have interpreted the ADEA to apply extraterritorially. We disagree. The question before the court is a matter of pure statutory construction, and agency expertise is not controlling. Rather, the question is one on which the courts are particularly placed to give an impartial judgment.

Finally, appellant argues that the decision to discharge him was made in New York, not in London, and that therefore his cause of action does not depend on the extraterritorial application of the ADEA. The language of section 213(f), however, looks to the place of employment, not the place where the decision was made. Unless we are to accept one of appellants arguments that section 213(f) does not apply, this argument is irrelevant.