## S.F. DE YOREO

v.

## BELL HELICOPTER TEXTRON, INC.

### Civ. A. No. 4–84–106–K.

United States District Court,
N.D. Texas,
Fort Worth Division.

April 29, 1985.

Allen L. Prince, Dallas, Tex., for plaintiff.

Brown, Herman, Scott, Dean & Miles by Beale Dean, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

BELEW, District Judge.

This cause involves the extraterritorial effect of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"). Plaintiff S.F. DeYoreo, a sixty-five year old American citizen was employed in Ontario, Canada by Defendant Bell Helicopter Textron, Inc. ("Bell"). In January, 1983, Plaintiff's employment was terminated, allegedly because of his age, in violation of the ADEA.

In its answer, Bell raised as a defense that the ADEA does not apply extraterritorially to American citizens working abroad and therefore, Plaintiff fails to state a claim upon which relief can be granted. Plaintiff moved to strike this defense as insufficient, arguing that the ADEA does apply extraterritorially or at the very least, it applies when the decision to terminate has been made here. Defendant responded with a formal motion to dismiss which further expounded upon the defense initially raised in its answer. For the reasons stated herein, we agree with Defendant and dismiss this cause of action.

The material facts are not in dispute. Plaintiff was first employed by Bell's predecessors in April, 1952. He worked at various locations in the United States until above November 1, 1976, when he was transferred from Bell's Fort Worth, Texas, offices to its Canadian office in Ottawa, Ontario to work as a Customer Support

Representative. Though he worked in Canada, his immediate supervisor was in Texas.

On October 22, 1982, Defendant notified Plaintiff that it was eliminating the Ontario office and thus, Plaintiff's position. His termination was to be effective January 14, 1983. Plaintiff requested and was denied a transfer and was in fact terminated on the prescribed date. Several months later, Bell did place another Customer Support Representative, about 42 years of age, in Ottawa, who was trained and familiar with Bell's newly certified 214ST helicopter which was increasingly being sold and used in Canada. It is Bell's decision to have a younger man in a job that was supposed to be eliminated that forms the heart of Plaintiff's age discrimination claim.

We begin our analysis by outlining the relevant statutory provisions. The enforcement procedures of the ADEA, 29 U.S.C. § 626(b), are largely "borrowed" from the Fair Labor Standards Act ("FLSA"). Section 626(b) reads in part:

> The provisions of this Act shall be enforced in accordance with the powers, remedies and procedures provided in Sections 11(b), 16 (except for subsection (a) thereof) and 17 of the FLSA.

Section 11(b), 29 U.S.C. § 211(b), gives investigative powers to the Administrator by which to enforce the FLSA. Section 17, 29 U.S.C. § 217, provides United States District Courts with power to enjoin violations of the FLSA. Sections 16(b) and (c), 29 U.S.C. §§ 216(b) and (c), allows aggrieved employees to maintain court actions for unpaid wages and authorizes the Secretary to pay unpaid wages to an aggrieved employee and then sue the offending employer himself.

Most relevant to our inquiry, however, is the incorporation of Section 16(d), 29 U.S.C. § 216(d), into the ADEA. That section reads, in part: "[N]o employer shall be subject to any liability or punishment under this Act ... on account of his failure to comply with ... provisions of such Acts (1) with respect to work ... performed in a workplace to which the exemption in Section 13(f) is applicable ..."

The exemption provision, 29 U.S.C. § 213(f) states that Sections 6, 7, 11 and 12 of the FLSA shall not apply to employees whose services are performed in foreign countries.[1] Section 6, 29 U.S.C. § 206, sets forth minimum wage requirements; section 7, 29 U.S.C. § 207, sets forth maximum hour limitations; section 11, to repeat, gives the administrator investigative powers; and section 12, 29 U.S.C. § 212, sets forth child labor restrictions. The problem, thus posed, is whether the exemption is applicable to an American employed abroad who sues his employer for age discrimination.

This Court is not the first to address this issue. Four district courts have published opinions on this very question; three of those courts' decisions have been affirmed by their respective circuit courts of appeals.[2] However, this question has not yet been decided by the Fifth Circuit. To date, all the courts addressing this issue have ruled against extraterritorial application of the ADEA. Their reasoning persuades us to agree with their conclusion.

---

1. 29 U.S.C. § 213(f) provides:
   (f) The provisions of sections 6, 7, 11 and 12 [29 U.S.C.S. §§ 206, 207, 211, 212] shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States other than the following: a State of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (ch. 345, 67 Stat. 462) [43 U.S.C.S. §§ 1331–1343]; American Samoa; Guam, Wake Island; Eniwetok Atoll; Kwajalein Atoll; Johnston Island; and the Canal Zone.

2. Chronologically, the cases are: *Osborne v. United Technologies Corp.*, 16 F.E.P. 586 (D.Conn.1977); *Cleary v. United States Lines, Inc.*, 555 F.Supp. 1251 (D.N.J.1983), *aff'd*, 728 F.2d 607 (3rd Cir.1984); *Zahourek v. Arthur Young & Co.*, 567 F.Supp. 1453 (D.Col.1983), *aff'd* 750 F.2d 827 (10th Cir.1984); *Pfeiffer v. W.M. Wrigley Jr. Co.*, 573 F.Supp. 458 (N.D.Ill. 1983), *aff'd*, 755 F.2d 554 (7th Cir.1985).

We take as our starting point the opinion of Judge Sarokin in *Cleary v. United States*, 555 F.Supp. 1251 (D.N.J.1983), as it provides the most exhaustive analysis of the issue at hand. Mr. Cleary, the Plaintiff in that case, had been employed by an American company in various parts of Europe. He, like our Plaintiff, was terminated due to an alleged structural reorganization and argued that the ADEA should apply extraterritorially or at least to employees whose termination was a result of a decision made in the United States. 555 F.Supp. at 1253–56.[3]

Judge Sarokin began his analysis with the premise that unless a contrary intent appears, a statute should be construed to apply only within the territorial jurisdiction of the United States. 555 F.Supp. at 1257 *citing Blackmer v. United States*, 284 U.S. 421, 437, 52 S.Ct. 252, 254, 76 L.Ed. 375 (1932). He went on to point out that in the case of the ADEA, such a construction is bolstered by the fact that Congress expressly included the section 213(f) exemption. He found the Supreme Court's decision in *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) "particularly enlightening," on the issue of Congressional intent behind the ADEA.

> In *Lorillard*, the Court held that jury trials are available to private litigants under the ADEA because the Act incorporated provisions of the FLSA, which provided for such a right. In so holding, the Court noted: "Pursuant to ... 29 U.S.C. § 626(b), violations of the ADEA generally are to be treated as violations of the FLSA." *Id.* at 578, 98 S.Ct. at 869. The Court then went on to state:
>> [W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute. *That presumption is particularly appropriate here since,*

>> *in enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation.*

> *Id.* at 581, 98 S.Ct. at 870 (emphasis supplied).

555 F.Supp. at 1253.

Judge Sarokin discussed several other factors which militate against extraterritorial application of the ADEA. First, it would be anomolous to allow extraterritorial application of the ADEA when the Equal Employment Opportunity Commission ("EEOC") has no mechanism to function abroad.[4] 555 F.Supp. at 1259–60. Also, unlike Title VII which by its language permits an inference that Congress intended protection for American citizens working abroad, the language of the ADEA permits no such inference. 555 F.Supp. at 1261–62. Finally, Congress knows how to specifically provide for extraterritorial application of a statute when it so desires, as is evidenced by the Defense Base Act, 42 U.S.C. § 1651 *et seq.*, and the War Hazards Compensation Act, 42 U.S.C. § 1701(a), yet it chose not to so provide in the ADEA. 555 F.Supp. at 1262–63.

As to Mr. Cleary's argument the ADEA is applicable due to the occurrence of the discriminatory act in the United States, Judge Sarokin stated:

> This argument misses the point. Because the ADEA does not apply extraterritorially, plaintiff has no rights under the Act and therefore, he has no standing to allege a violation. Where the discriminatory decision took place is of no consequence.

555 F.Supp. at 1263.

The *Cleary* reasoning has, in varying degrees, been adopted by subsequent

---

**3.** Other issues raised in *Cleary* are not relevant to the issue at bar.

**4.** A claimant under the ADEA must first file a charge of age discrimination with the EEOC. *See* 29 U.S.C. 626(d).

courts.[5] The Third Circuit, in affirming *Cleary*, 728 F.2d 607 (3rd Cir.1984), wholly embraced the *Lorillard* presumption and the refusal to infer extraterritorial application from the statutory language. 728 F.2d at 608-10.

In *Zahourek v. Arthur Young & Co.*, 567 F.Supp. 1453 (1983), the court was faced with a terminated accountant employed in Honduras. That court fully adopted the *Cleary* reasoning, 567 F.Supp. at 1456, supplementing it with "obscure legislative history" demonstrating that Congress was aware of possible discrimination against Americans working abroad, yet chose not to afford them a remedy in the ADEA. *Id.* The Tenth Circuit affirmed this decision, emphasizing the *Blackmer* rule of statutory construction as well as the *Lorillard* presumption. *Zahourek*, 750 F.2d 827, 829 n* (10th Cir. 1984). The Tenth Circuit also rejected the argument that the place where the discriminatory act occurred should control. *Id.* at 829. The District Court in *Pfeiffer v. W.M. Wrigley Jr. Co.*, 573 F.Supp. 458 (N.D.Ill. 1983), has also adopted the *Cleary* reasoning.[6]

Plaintiff attacks the *Cleary* reasoning by asking the Court to look at the plain statutory language, instead of legislative intent. He claims that a misquote of statutory language allowed the *Cleary* court to read too much into the legislative intent. The *Cleary* court cites 29 U.S.C. § 213 as follows:

> [T]his title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country.

555 F.Supp. at 1258 (emphasis supplied). The statute actually reads "The provisions of sections 6, 7, 11 and 12 shall not apply ..." 29 U.S.C. § 213(f).[7] Hence, Plaintiff argues the actual discrimination prohibition

of FLSA section 15, 29 U.S.C. § 215, ("the discrimination provision") is *not* affected by the exemption and consequently, neither is the discrimination prohibition in the ADEA. Plaintiff further argues that Congress' choice to exclude incorporation of 29 U.S.C. § 216(a), a section which refers to the discrimination provision into the ADEA further demonstrates that the discrimination provision is not affected by the exemption.

While we agree that a reading of the statutory language is important, in this instance it is simply insufficient. No matter what Plaintiff would have us think, there is no "plain language" in the ADEA on the issue of its extraterritorial application. Hence, the Court must resort to rules of statutory construction. Plaintiff's argument, in effect, asks the Court to presume that the discrimination provisions of the ADEA do apply extraterritorially since Congress did not specifically apply the 213(f) exemption to them. Such a presumption is in direct contradiction to the *Blackmer* rule of statutory construction and is, therefore, one which we cannot adopt. *See Zahourek* at 829, n*; *Pfeiffer*, 573 F.Supp. at 459; *Cleary*, 555 F.Supp. at 1257.

Plaintiff also raises the seemingly inconsistency between the existence of the ADEA and the reluctance of courts to apply it extraterritorially. That inconsistency is addressed by the *Cleary* court as follows:

> There is no valid policy reason why this country's law against age discrimination should not apply to American citizens employed by American companies abroad. In fact, not to apply the laws under such circumstances invites their circumvention by unscrupulous employees.

555 F.Supp. at 1263. Our response to this problem is that Congress chose not to pro-

---

5. Prior to Cleary, in 1977, this issue was addressed by a District Court in Connecticut in *Osborne v. United Technologies Corp.*, 16 F.E.P. 586 (D.Conn.1977). This court also ruled against extraterritorial application of the ADEA.

6. The Seventh Circuit has recently affirmed the *Pfeiffer* court's ruling of no extraterritorial application of the ADEA in 755 F.2d 554 (7th Cir.1985).

7. See note 1 for full text.

vide for extraterritorial application of the ADEA. As the *Pfeiffer* court stated:

> Although this court agrees that the territorial application of the ADEA could invite some unscrupulous employers to circumvent the statute, it must assume that when Congress enacted the statute it took this into consideration. The Court will not substitute its views for that of Congress.

573 F.Supp. at 461.

Hence, we hold that the ADEA does not apply to American citizens working in foreign countries. Plaintiff's motion to strike is denied and Defendant's motion to dismiss is granted. An order will be entered in accordance with this opinion.