Ali BOURESLAN

v.

ARAMCO, Arabian American Oil Company and Aramco Services Company.

Civ. A. No. H–85–3506.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 27, 1987.

Perry Archer, Hjalmarson & Paster, Houston, Tex., for plaintiff.

Gloria M. Portela, Linda Headley, Hutcheson & Grundy, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

DeANDA, District Judge.

Pending before the court are Defendants' motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated below, the court finds the motions should be granted.

Plaintiff, Ali Boureslan, is an American citizen who was born in Lebanon and resides in El Paso, Texas. Plaintiff instituted this action against Arabian American Oil Company (Aramco) and Aramco Services Company (ASC). Aramco is a Delaware corporation with its principal place of business in Dhahran, Saudi Arabia. Aramco is licensed to do business in Texas. ASC is a Delaware corporation with its principal place of business in Houston, Texas.

Plaintiff was first employed as an engineer for ASC in Texas beginning July of 1979. In November of 1980 Plaintiff was transferred to work for Aramco in Saudi Arabia. Plaintiff's troubles began in September of 1982, when Plaintiff's supervisor allegedly began harassing Plaintiff about his national origin, race and religion. Plaintiff's status deteriorated, eventually resulting in termination on June 16, 1984. Plaintiff relied on 42 U.S.C. § 2000e for jurisdiction but alleges state law causes of action in addition to his Title VII claim.

Defendants urge the court to dismiss Plaintiff's claims for lack of subject matter jurisdiction. Defendants argue that Title VII does not apply to Plaintiff's employment in Saudi Arabia and Plaintiff's state law claims should be likewise dismissed for lack of pendent jurisdiction.

The case law discussing whether Title VII has extraterritorial application is scant. *Bryant v. International Schools Services,* 502 F.Supp. 472 (D.N.J.1980), *rev'd on other grounds,* 675 F.2d 562 (3d Cir.1982), is on point. In *Bryant* the court ruled that Title VII did have extraterritorial application. The court relied on Title VII's exemption of "aliens outside of any State," negatively inferring that Title VII must apply to citizens employed outside the United States. *See* 42 U.S.C. § 2000e–1; 502

F.Supp. at 482. The court cited *Love v. Pullman Co.*, 13 F.E.P. 423 (D.Col.1976), a case in which the court, in a footnote, drew the same negative inference. *See* 13 F.E.P. at 426 n. 4.

Since *Bryant* no court has confronted and ruled on the extraterritorial issue. Several courts have cited *Bryant* in deciding whether the Age Discrimination in Employment Act (ADEA) applies extraterritorily. *See, e.g., Cleary v. United States Lines, Inc.*, 728 F.2d 607, 609 (3d Cir.1984). The E.E.O.C. has accepted *Bryant* as the law. *See, e.g.*, E.E.O.C. Dec. No. 84–2, 33 F.E.P. 1893 (Dec. 2, 1983). While no circuit court has decided the extraterritorial question, the Court of Appeals for the Third Circuit remarked, in *dicta*, that the reasoning behind the negative inference is controversial. *Cleary*, 728 F.2d at 609.

Indeed, the negative inference underlying the *Bryant* decision is suspect. In *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 94 S.Ct. 334, 30 L.Ed.2d 287 (1973), the Supreme Court drew a different inference from the identical Title VII language. The Court held that by exempting "aliens outside of any State" Congress intended to include aliens inside the United States within Title VII's coverage. 414 U.S. at 95, 94 S.Ct. at 340.

Abandoning the *Bryant* precedent does little more than send the court back to square one. An examination of Title VII's legislative history offers little guidance; the extraterritorial issue is not mentioned. The most that one can glean from the legislative history is that Congress enacted Title VII to remedy domestic discrimination. *See, e.g.*, H.R.Rep. No. 914, 88th Cong., 2nd session, *reprinted in* 1964 U.S. Code Cong. & Ad.News 2355, 2393 (focusing on domestic discrimination). There is no indication that Congress was concerned about discrimination abroad. Legislative efforts in 1964 were directed towards eliminating discrimination in the United States. It is doubtful that Congress considered enacting legislation to counter discrimination against citizens abroad.

Title VII's language does not support extraterritorial application. As previously noted, reliance on the language exempting "aliens outside of any State" is erroneous. Additionally, Title VII applies only to "employers." The statute defines "employer" as one "engaged in any industry affecting commerce who has fifteen or more employees...." 42 U.S.C. § 2000e(b). Title VII, at Section 2000e(g), defines commerce as

[T]rade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

Section 2000e(h) further defines "industry affecting commerce" as including activity or industry affecting commerce within the meaning of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 402(c). The Labor Management Reporting and Disclosure Act defines industry affecting commerce as industry included under the Labor Management Relations Act. Finally, the Supreme Court has held that the Labor Management Relations Act has no extraterritorial application. *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); *Benz v. Compania Navieia Hidalgo*, 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957).

A study of the statutory language and legislative history reveals, if anything, that Congress did not intend Title VII to apply extraterritorily. *See Pfeiffer v. Wm. Wrigley, Jr. Co.*, 755 F.2d 554 (7th Cir.1985). At a minimum, the absence of a clearly expressed intent creates a presumption that Congress did not intend extraterritorial application. *See Foley Bros. v. Filardo*, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed.2d 680 (1949). It is doubtful that Congress reserved the question of Title VII's application for the courts to decide. It is much more likely that Congress never considered the issue.

Examining the development of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 is instructive. When enacted, ADEA was silent on the question of extraterritorial application. Courts struggled with the issue but concluded that Congress did not intend ADEA to apply extraterritorially. *See, e.g., Cleary v. United States Lines, Inc.,* 728 F.2d 607 (3d Cir.1984); *Thomas v. Brown & Root, Inc.,* 745 F.2d 279 (4th Cir.1981). In 1984, Congress amended the ADEA. Congress included in the definition of employee "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." 29 U.S.C. § 630(f). Thus, Congress added a clear statement, obviating the need for judicial guesswork.

In *Pfeiffer v. Wm. Wrigley, Jr. Co.,* 755 F.2d 554 (7th Cir.1985), the court held that ADEA did not apply extraterritorially. Judge Posner, writing for the court, found the lack of statutory language and legislative history persuasive. *See id.* at 556–57. The decision is important because the court issued its ruling knowing that Congress amended the ADEA to apply extraterritorily. Judge Posner pointed out that the amendment did not apply retroactively. *See id.* at 559. The court rejected Plaintiff's argument that the amendment clarified the original act. *See id.* Judge Posner asserted that Congress may have intended to change the law, not elucidate it. *See id.*

Following the reasoning in *Pfeiffer,* even if Congress did amend Title VII to apply extraterritorily, the court should rule against extraterritorial application. Of course, Congress has not amended Title VII. The court must base its decision on the applicable statute and its legislative history, which do not support extraterritorial application.

Finally, there are significant policy reasons for not applying Title VII abroad. Imposing Title VII abroad infringes on the sovereignty of other nations. Indeed, in the case at hand Saudi Arabia has enacted its own statute, the Labor and Workman

Law of 1959. Many of its provisions conflict with Title VII. Given the potential conflict, it should be Congress that mandates extraterritorial application. *See Pfeiffer,* 755 F.2d at 554.

The court thus concludes Title VII should not be applied extraterritorily. Accordingly, Defendants' motions to dismiss under Rule 12(b)(1) should be granted. Plaintiff's state law claims should also be dismissed for lack of pendent jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court hereby

ORDERS Defendant Aramco's motion to dismiss under Rule 12(b)(1) is GRANTED. The court further

ORDERS Defendant ASC's motion to dismiss under Rule 12(b)(1) is GRANTED. The court further

ORDERS Plaintiff's state law claims are DISMISSED for lack of pendent jurisdiction.