**Nicole A. DeSOIGNIES, Plaintiff,**

v.

**CREDIT LYONNAIS, Defendant.**

**No. 82 Civ. 428 (SWK).**

United States District Court,
S.D. New York.

Sept. 10, 1985.

---

Robert David Goodstein, New Rochelle, N.Y., for plaintiff.

Cole & Deitz by Anthony J. D'Auria, New York City, for defendant.

## MEMORANDUM DECISION

KRAM, District Judge.

This action was commenced on January 25, 1982, by the filing of a complaint alleging that plaintiff's employer, defendant Credit Lyonnais, had violated section 4(a)(1) and (a)(2) of the Age Discrimination in Em-

ployment Act, 29 U.S.C. § 623(a)(1) and (a)(2) ("ADEA") by discriminating against her with respect to her age. The case was tried by the Court on November 21 and 22, 1983. At the close of the trial defendant moved for judgment in its favor. (Tr. 284.) The Court granted defendant's motion, with its opinion to follow. (*Id.*) The following constitutes the Court's findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

## FACTS

Credit Lyonnais is a commercial banking institution organized under the laws of France, with a branch office in New York.

Plaintiff, a New York resident, was hired by Credit Lyonnais on or about June 11, 1974, to work in its New York office. (Tr. 6; Plaintiff's Exh. 43.) She was hired initially for the position of executive secretary. (Tr. 7.) At the time she was hired, DeSoignies was forty or forty-two years old.[1] (Tr. 35, 102; Plaintiff's Exh. 43.)

In early 1975, DeSoignies was promoted to a position in the individual accounts section of the bank. (Tr. 7.) She remained in this position until December, 1977. During her first two years in this department, plaintiff received favorable reviews of her work. (Plaintiff's Exhs. 3, 4.) In 1977, however, plaintiff received unfavorable evaluations of her work. (Plaintiff's Exh. 5; Defendant's Exh. B.) Indeed, DeSoignies received below average ratings in every category on her annual review that year. (Plaintiff's Exh. 5.) The head of her department noted "[a] quick solution must be found, i.e. a transfer to a department where her capacities could be better used." (Plaintiff's Exh. 5.) DeSoignies's relationship with, or attitude toward, her co-workers and her supervisors was termed "immature." (*Id.*) Plaintiff felt that her overall evaluation was "incorrect and illogical." (Tr. 41.) She addressed a note for her file attempting to refute some of the criticisms

---

1. Plaintiff stated in her application for employment with Credit Lyonnais that she had been born on January 21, 1934. She testified at trial, however, that she had been born in 1932. When asked to explain this inconsistency, plaintiff remarked "maybe I felt I was born in '34." (Tr. 103.) She further stated "I felt I was born in 1935 for that matter." (*Id.*)

levied against her by the department head. (Defendant's Exh. A.) At the trial, DeSoignies would not even admit that these evaluations had been "critical" (Tr. 40–42); she preferred to use the term "unflattering" (Tr. 41). In any event, as a result of her supervisor's dissatisfaction with her work, she was transferred to the Technical Assistance Department ("TAD") and was not awarded an annual raise. (Tr. 52; Plaintiff's Exh. 43.)

TAD was broken down into two separate sections, the Credit Analysis Section and the Portfolio Administration Section. The Credit Analysis Section analyzed the creditworthiness of customers and potential customers of the bank and did industry studies. The Portfolio Administration Section administered the outstanding loans and loan applications of the bank and performed some credit investigations. (Tr. 178.) The head of the Portfolio Administration Section was Howard Cohen, who in turn reported to John Mazzocchi, the head of TAD. (Tr. 181.) When DeSoignies was transferred to TAD at the beginning of 1978, she was assigned to the Portfolio Administration Section. (*Id.*)

DeSoignies's primary responsibility when she was assigned to TAD was coordinating the loan applications with their approvals and authorizations. (*Id.*) Essentially, this entailed making copies of loan applications, sending the originals to the main office in Paris after receiving branch approval, and seeing that copies of any approvals from the main office were attached to, and filed with, the branch copy of the application. (Tr. 182.)

In May, 1978, DeSoignies's work in TAD was given an interim evaluation. (Plaintiff's Exh. 6; Tr. 183–186.) Her initial evaluation in TAD was favorable. Her supervisors indicated that she had "made a satisfactory adjustment to her new assignment" and evaluated her work, generally, as somewhat above average. (Plaintiff's Exh. 6.) Things had changed, however, by the time of her annual review, some four months later. (Tr. 187; Plaintiff's Exh. 7.)

At that time her work was evaluated as average to slightly below average. (*Id.*) Two particular areas of difficulty were noted: work with detail and questioning the judgment of her supervisors. It appears that DeSoignies did not have a good relationship with her supervisors. Indeed, her relationship with her immediate supervisor, Howard Cohen, was so bad that she tried to deny the very existence of a supervisory relationship. (Tr. 75–76, 188–89; 211–13.)

Ultimately, plaintiff's duties as Administrative Assistant in TAD included the following: administration of loan authorizations and control of loan maturities; liaison between Parisian and domestic lawyers; preparation of a weekly approval report; and various discrete small projects. (Tr. 8, 222–23, 227; Plaintiff's Exhs. 10, 11.)

Two other duties of significance were performed by the Portfolio Administration Section with respect to loans. One of those duties involved making certain that all the necessary legal documentation was perfected to secure the bank's position on the loan. The other duty involved drafting and sending commitment letters to the client setting forth the terms and conditions of a loan, once approved. Initially, in 1978 and 1979, both of these functions were performed by Jacques Lanoue. (Tr. 178–80.) In July 1979, a separate position was created with the sole responsibility for commitment letters. (Tr. 180.) That position was awarded to Rosemarie Lenz, theretofore DeSoignies's successor in the individual accounts section of the bank.

In September, 1979, the duties performed by plaintiff were redistributed, and her position eliminated. (Tr. 193, 197, 220–23.) Whereas DeSoignies had performed the administration of loan authorizations manually, now the bulk of the work on loan authorizations was computerized. (Tr. 9, 96, 193–94, 197, 219–20; Plaintiff's Exh. 53.) What little was left of plaintiff's duties was redistributed to two individuals: Jacques Lanoue, a fifty-two year old employee already in the department, and John Mazzoc-

chi, the head of the department.[2] (Tr. 220–23.)

Plaintiff was kept on at Credit Lyonnais while a suitable transfer within the branch could be effected. Initially, she was transferred to the Credit Analysis Section of TAD under the immediate supervision of Peter Crawford. (Tr. 154.) It was contemplated that this transfer into the Credit Analysis Section was to be temporary (Tr. 199, 230; Plaintiff's Exh. 52); however, if DeSoignies performed well in this area, she could have remained there (Tr. 229). In this new position, DeSoignies was first assigned to do work on spread sheets, transposing numbers from one document (such as a loan applicant's financial statements), to another. (Tr. 156.) Her supervisors were not satisfied with her work on spread sheets, noting both her poor attention to detail and her nearly indecipherable handwriting. (Tr. 157, 248–49.) Nonetheless, she was thereafter allowed to do a few credit analyses (an opportunity DeSoignies strongly desired).[3] (Tr. 230.) Credit analysis involves synthesizing and analyzing numbers from the spread sheets to determine the credit-worthiness of a loan applicant in order to determine whether or not to recommend that a loan be made. (Tr. 152.) Once again, her supervisors were not satisfied with the quality of DeSoignies's work. (Tr. 158, 198.) Her supervisors were particularly dissatisfied with DeSoignies's attitude and with her unwillingness to accept criticism. (Tr. 171, 188, 198; Plaintiff's Exh. 7.)

DeSoignies's annual evaluation at the end of October, 1979, showed that her performance had not improved over the last year. (Plaintiff's Exh. 8.) Once again, DeSoignies's work was rated as average. Her supervisors noted that she had difficulty following instructions, that she occasionally displayed a lackadaisical attitude which caused extra work to be distributed to other members of the department, and that she attended to "personal problems" during working hours. (*Id.*) DeSoignies disagreed with these ratings, and even attempted to erase some of the negative comments contained on the sheet. (Tr. 201–202.) In January, 1980, Credit Lyonnais hired Carol Mason, a thirty year old woman, with one and one-half years experience as a credit analyst to fill a new position as credit analyst in TAD. (Tr. 206–209; Defendant's Exh. P.) On January 25, 1980, DeSoignies was terminated by Credit Lyonnais. (Tr. 7; Plaintiff's Exh. 43.)

### DISCUSSION

Plaintiff claims that she was terminated, and that she was not placed in at least two other positions for which she was qualified, because of her age. Plaintiff claims that defendants conduct violated her rights under the ADEA. Section 2 of the ADEA provides, in relevant, part, that it "shall be unlawful for an employer ... to discharge any individual ... [or] to limit, segregate, or classify his employees in any which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's age." 29 U.S.C. § 623(a)(1) and (2). That section, however, specifically provides that it is not unlawful for an employer to do these things "based on reasonable factors other than age" or "for good cause." 29 U.S.C. § 623(f)(1) and (3).

■ The burden of persuasion in this case is on the plaintiff to prove by a preponderance of the evidence that she was the victim of illegal age discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Pena v. Brat-*

---

**2.** Plaintiff stated that some of her functions were distributed to Rosemarie Lenz, a younger woman (35) who had been promoted into the department three months earlier. The credible testimony of Mr. Mazzocchi refutes that contention.

**3.** Plaintiff had received some training in credit analysis through a course she had taken from Dun & Bradstreet. (Tr. 36.) Indeed, plaintiff had taken several courses to improve her skills for work within the bank—some given within the bank (Tr. 35–36) and some outside the bank for which the bank reimbursed her expenses (Tr. 36–37).

*tleboro Retreat,* 702 F.2d 322, 323 (2d Cir. 1983) ("standards relating to burden and order of proof in Title VII cases apply as well to cases arising under the ADEA"); *see also Trans World Airlines, Inc. v. Thurston,* — U.S. ——, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985); *Lorillard v. Pons,* 434 U.S. 575, 583–84, 98 S.Ct. 866, 871–72, 55 L.Ed.2d 40 (1978); *Nash v. Jacqueline Cochran, Inc.,* 548 F.Supp. 676, 679 (S.D.N. Y.1982). Although the Court reserved decision on defendant's motion to dismiss for failure to establish a *prima facie* case at the close of plaintiff's case, the question before the Court now (and at the close of trial when it granted defendant's renewed application for judgment of dismissal) is "the ultimate question of discrimination *vel non.*" *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). Plaintiff must show by a preponderance of the evidence that age was a "determinative factor" in the decision to discharge her, or to the offer the open positions to someone else. *See Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir.1983); *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir. 1980) (plaintiff not required to show that age was sole factor in employer's decision), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). The Court finds that plaintiff has not carried her burden.

Defendant articulated a legitimate, nondiscriminatory reason why DeSoignies was discharged, without transfer to either of the two open positions: to wit, her position was eliminated and, because of her background, job performance, and attitude, she was not as qualified for the two other positions as the persons awarded those positions. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Hagelthorn,* 710 F.2d at 81 (dissatisfaction with employee's performance and attitude constituted legitimate reasons); *Meschino v. International Tel. and Tel. Corp.,* 563 F.Supp. 1066, 1070 (S.D.N.Y.1983) (elimination of position constituted legitimate reason); *Nash,* 548 F.Supp. at 679–80 (same).

■ In light of this, plaintiff can satisfy her burden of proving intentional discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence," *i.e.,* that it is a mere pretext for discrimination. *Aikens,* 103 S.Ct. at 1482 (*quoting Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). Plaintiff attempted to do this in three ways: first, by testifying that age was specifically discussed with her on the day of her termination; second, by attempting to show that defendant was conscious of age in the demographics of its workforce; and third, by arguing that she was at least equally qualified for the positions awarded two younger women—Rosemarie Lenz and Carol Mason. These arguments are to no avail.

Plaintiff claims that Jean Claude Goubet, the bank officer who informed her that she was being terminated, discussed with her the impact of termination at her age. Specifically, DeSoignies testified that she asked Goubet "how would you like it if somebody would terminate you if you were 48 years old" and that he replied that it would not happen to him. (Tr. 17.) DeSoignies also testified that she had a conversation with Frances Fisher, the head of the personnel department, on the day she was terminated. During that conversation, Fisher allegedly stated that the bank was "looking for good, young, aggressive people." (Tr. 18.)

■ These comments, even if they were indeed made, do not persuade the Court that age was a determinative factor in this case. These are precisely the type of ambiguous comments which allow for two interpretations, only one of which is necessarily discriminatory. *See Meschino,* 563 F.Supp. 1072. Both comments were apparently made in response to a question posed by DeSoignies (Tr. 17; Defendant's Exh. O.) Thus, plaintiff instilled age into those conversations. Accordingly, she cannot now argue that an inference of discrimina-

tion is appropriately drawn from the fact that age was discussed at the time of her termination. Defendant's officers, at most, responded to her comments. More significantly, the Court does not find plaintiff's testimony in this regard to be credible.[4] Her testimony is uncorroborated, despite the fact that other parties to these alleged discussions testified at trial. Mazzocchi, who was allegedly present when Goubet made his comments, testified at trial. Plaintiff did not attempt in any way to have Mazzocchi corroborate her testimony about Goubet's statements. Moreover, Fisher testified as a witness for plaintiff. She was not even asked about her alleged comments. Given the uncorroborated nature of this testimony, the improbability that it is true, and the general credibility of plaintiff,[5] the Court finds that plaintiff's testimony that defendant's officers specifically alluded to age, implying that it was a factor in their decision, is not worthy of credence.

Plaintiff also attempted to establish defendant's "preoccupation" with age by showing that employees' dates of birth were listed on many forms, and by showing that defendant included age as a characteristic in its demographic breakdowns of its work force (e.g., Plaintiff's Exhs. 35–37). Several non-discriminatory inferences can be drawn regarding this awareness of age. Moreover, the plaintiff did not show any instances of use or compilation of this information near to the time of plaintiff's discharge. It appears that the most recent example of defendant's "preoccupation" predated plaintiff's dismissal by some two or three years. (Plaintiff's Exh. 37.) In any event, the Court does not infer from defendant's awareness of the age of its employees (generally or specifically) that it used that information in making decisions such as the decision to terminate plaintiff.

Finally, plaintiff attempted to show that she was equally qualified for the positions awarded to Lenz and Mason. Plaintiff failed to establish that she was qualified at all for these positions, let alone that she was as qualified as Lenz and Mason. Furthermore, defendant conclusively established that, in its reasonable estimation, plaintiff was not suitable for either position.

DeSoignies was not suited for the position awarded to Lenz because she lacked such necessary qualifications as good written communication skills (Tr. 237) and attention to detail (Tr. 187, 190–91; Plaintiff's Exh. 7). Moreover, in this position DeSoignies would have been required to work under the close supervision of Howard Cohen. DeSoignies had refused in the past to work under his supervision and had eschewed even recognizing him as her supervisor.[6]

DeSoignies was given a brief opportunity to prove herself capable of performing the work ultimately assigned to Mason. She failed to do so. To begin with, plaintiff was not adequately trained to be a credit analyst. (Tr. 94.) Her supervisors determined that she would need extensive supervision to overcome that deficient training. (Tr. 161.) Moreover, her work during her brief stint in the Credit Analysis Section was unacceptable to her supervisors. (Tr.

---

**4.** Indeed, the Court found plaintiff's testimony to be generally unworthy of credence. DeSoignies' testimony to the Court, as well as her representations to her employers (including defendant) on core issues like her age and employment background was marked by tergiversation and mendacity. She refused to justify her false statements regarding her age with any credible explanation (see footnote 1, above); she gave differing pictures of her employment history depending upon who was the listener (see Defendant's Exhs. D, F, K, L; Plaintiff's Exhs. 45, 47) and how artfully couched was the question (Tr. 61–72); she would not even acknowledge the obvious about her evaluations while at Cred-

it Lyonnais (Tr. 40–42, 44, 46); and she insisted, despite the overwhelming evidence to the contrary, that Howard Cohen was not her supervisor (Tr. 75–76, 185–89, 211–13; Plaintiff's Exhs. 6–8). These are but examples of the lack of forthrightness that pervaded plaintiff's testimony. Accordingly, the Court rejects plaintiff's uncorroborated testimony regarding the only arguably direct evidence of discrimination in this case—the statements of defendant's officers.

**5.** See generally footnote 4, above.

**6.** Tr. 75–76, 185–89; 211–13.

154, 156, 163–64, 177, 181, 206–09, 214.) Finally, plaintiff even admitted that if Mason had prior experience as a credit analyst (which it turns out she did) then her claim that she was equally qualified would be affected. (Tr. 99–100.)

 Defendant's argument that plaintiff's work was unsatisfactory and that she was not qualified to fill the positions awarded to Lenz and Mason is supported by the evidence. Plaintiff received three consecutive annual reviews (1977–1979) which revealed that her work was satisfactory or worse. (Plaintiff's Exhs. 5, 7, 8.) Indeed, the department head of TAD testified credibly that DeSoignies ranked "the lowest as far as capabilities and performance were concerned" among all the people he supervised. (Tr. 205.) Accordingly, plaintiff has failed to show that she was qualified for the open positions, or that she was doing satisfactory work. *See Kahn v. Pepsi Cola Bottling Group*, 547 F.Supp. 736, 739 (E.D.N.Y.1982).

DeSoignies was hired to work for Credit Lyonnais after she was already within the class protected by the ADEA. She was promoted once while she was within that class and was reimbursed for, and encouraged to take, courses designed to improve her skills and prepare her for advancement within the branch. This treatment is hardly the kind expected of an employer who would intentionally discriminate against her based on age. *See Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921 (2d Cir.1981); *EEOC v. Trans World Airlines, Inc.*, 544 F.Supp. 1187, 1231 (S.D.N.Y.1982).

 In short, the Court finds that Credit Lyonnais's decisions regarding DeSoignies's employment were not affected at all by considerations of age. Plaintiff did not demonstrate by a preponderance of the evidence that age was a determinative factor in her termination. Accordingly, plaintiff has not satisfied her burden of proving that she was intentionally discriminated against. The Clerk shall enter judgment in favor of the defendant DISMISSING the plaintiff's claim.

SO ORDERED.