WESTERN FUELS–ILLINOIS, INC., et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION, et al., Respondents.

No. 88–2505.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1989.

Decided July 11, 1989.

As Amended July 14, 1989.

---

Paul M. Donovan, Laroe, Winn, Moerman & Donovan, Washington, D.C., for Western Fuels–Illinois, Inc.

Paul M. Donovan, Gerald L. Richman, Maureen Quinn, LaRoe, Winn, Moerman & Donovan, Washington, D.C., for Western Fuels Ass'n, Inc., Western Fuels–Utah, Inc., Western Fuels Service Corp.

Anton R. Valukas, U.S. Atty., Chicago, Ill., Robert S. Burk, I.C.C., Washington, D.C., William Iedmond, I.C.C., Chicago, Ill., Richard L. Thornburg, U.S. Atty. Gen., G. Paul Moates, David M. Levy, Sidley & Austin, Kenneth P. Kolson, Frederick L. Wood, Nicholas J. DiMichael, Donelan, Cleary, Wood & Maser, Robert F. Stauffer, Nat. Coal Ass'n, Edward H. Comer, Edison Elec. Institute, and Virginia Strasser, I.C.C., Washington, D.C., for I.C.C.

Anton R. Valukas, U.S. Atty., Robert S. Burk, William Iedmond, Richard L. Thornburg, U.S. Atty. Gen., John J. Powers, III, John P. Fonte, Dept. of Justice, Appellate Section, Antitrust Div., Washington, D.C., for U.S.

Kenneth P. Kolson, J. Thomas Tidd, Washington, D.C., for Association of American Railroads.

Frederic L. Wood, Donelan Cleary Wood & Maser, Washington, D.C., for National Industrial Transp. League, Intervenor.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This is a petition to review an Interstate Commerce Commission ("ICC") denial of petitioner's request for a rulemaking procedure to establish mandatory procedures for revealing price terms in long-term coal transportation contracts. We deny the petition.

## I. Background

Western Fuels Association, Inc. is a non-profit fuel supply cooperative which, along with its subsidiaries, helps its member-owners to obtain delivery of coal. Its members are consumer-owned utilities throughout the United States. Western Fuels and its subsidiaries are involved in a number of aspects of the coal delivery business, including owning and operating a mine and purchasing coal from other sources. Pertinent to this petition is Western Fuels' role in negotiating coal supply contracts and rail transportation contracts for its members.

On March 21, 1988, Western Fuels and its subsidiaries (herein collectively referred to as "Western Fuels") filed a petition pursuant to 49 U.S.C. § 10326(a) (1982) requesting the ICC to institute a rulemaking to create requirements for disclosure of certain economic terms of long-term railroad coal transportation contracts in order to enhance price competition. The ICC denied the petition finding that full disclosure would be inconsistent with 49 U.S.C. § 10713, which requires the disclosure of some limited information from rail transportation contracts, and that Western Fuels did not show that the Rail Transporta-

tion Policy set out at 49 U.S.C. § 10101a mandated such full disclosure.

## II. Standard of Review

▮▮ Our review of the ICC decision not to institute a rulemaking is guided by the standards of the Administrative Procedure Act ("APA"): whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1982). An agency decision not to institute a rulemaking should be overturned "only in the rarest and most compelling circumstances." *WWHT, Inc. v. FCC*, 656 F.2d 807, 818 (D.C.Cir.1981). Under 49 U.S.C. § 10326(b)(2), a rulemaking proceeding may be ordered only if, on the basis of "a preponderance of evidence in the record before the [ICC]," the rulemaking is "necessary" and "failure to take that action will result in the continuation of practices that are not consistent with the public interest or are not in accordance with [the Interstate Commerce Act (the "ICA")]."

## III. Analysis

Western Fuels contends that both grounds of the ICC denial of its petition are erroneous and that the ICC action violated the procedural requirements of the APA.

### A. Reasons Given by the ICC
#### 1. Policy of Section 10713

In its July 13, 1988 order denying Western Fuels' petition, the ICC wrote that it could not mandate disclosure of price terms, because "it is inconsistent with [ICC] policy on contract disclosure under [49 U.S.C. §] 10713." Ex Parte No. 387 at 3 (Sub–No. 961) (July 13, 1988). That statute and the accompanying regulations set out a two-tier system of disclosure. At the first tier, § 10713 requires rail carriers to file their contracts for rail services with the ICC "together with a summary of the contract containing such nonconfidential information as the [ICC] prescribes" and requires the ICC to "publish special tariff

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

rules for such contracts in order that the essential terms of the contract are available to the general public in tariff format." 49 U.S.C. § 10713(b)(1) (1982). The ICC regulations prescribe the "essential terms" at 49 C.F.R. § 1313.13 (1988) which do not include price information. The ICC's contract advisory service is to "compile and disseminate to interested parties nonconfidential summaries of the provisions of individual contract information...." *Id.* at § 10713(m)(1).

At the second tier, the ICC provides more details about individual contracts to parties who have standing to challenge them pursuant to 49 U.S.C. § 10713(d)(2)(A), (B) (1982). 49 C.F.R. § 1313.15 (1988). Western Fuels does not allege that it had standing to request discovery under § 10713(d)(2)(A), but requests first-tier public disclosure of price information.

Three circuits have upheld the ICC's disclosure regulations of essential terms against challenges that such disclosure should include price information. *Water Transport Ass'n v. ICC,* 722 F.2d 1025, 1031–32 (2d Cir.1983) ("*WTA*"); *Texas v. United States,* 730 F.2d 409, 417 (5th Cir. 1984), *modified on reh'g,* 749 F.2d 1144, *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985); *Water Transport Ass'n v. ICC,* 819 F.2d 1189, 1197 (D.C.Cir. 1987) (competitive concerns of water carriers are not protected by ICA). The *WTA* court wrote that the statute's recognition of a need for confidentiality "is not surprising since contracts generally are confidential and, absent a specific legislative purpose, there is no reason to treat rail contracts differently." 722 F.2d at 1032. That court relied on the fact that the Congressional Conference Committee had rewritten § 10713 to narrow the required disclosure in an effort to respect confidentiality. *Id.* at 1031–32.

Western Fuels attempts to limit the *WTA* case by characterizing the issue before that court as "the degree of information a third-party to a contract could demand prior to effectiveness of the contract in order to exercise its limited challenge right," where-

as the present case is a request for disclosure after contracts become effective. Brief of Petitioner at 23. However, it appears that the court made no such distinction, since the court framed the issue as whether or not the ICC's first-tier public disclosure rules were inconsistent with the § 10713(b) requirement to disclose essential terms. That is the same issue which is before us. In addition, Western Fuels has shown us no reason to believe that the parties' interests in confidentiality are overcome when a contract becomes effective.

The ICC argues that the Congressional amendments to § 10713(b) in the Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, 100 Stat.1910, evidence legislative ratification of the ICC limits placed on contract disclosure. The 1986 amendments added new and broader first-tier disclosure rules for rail contracts for agricultural commodities. Although the rules require disclosure of six "essential terms," price terms are not included. The ICC quotes from the comments of Senator Kassebaum, the sponsor of the amendment that "to protect the legitimate confidentiality concerns of contracting shippers, a first-tier disclosure proceeding should not disclose the actual rates in the contract or other obvious economic terms." 132 Cong.Rec. S16960 (daily ed. Oct. 17, 1986).

In order to show legislative ratification, the ICC relies on the principle enunciated in *Lorrilard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978), in which the Court wrote that when "Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." Since the ICC regulations in effect prior to the passage of the 1986 amendments prescribed confidentiality, Congress' approval is presumed.

Western Fuels disputes the ICC legislative ratification argument by alleging that the 1986 amendments were directed to a narrow issue: "the need of agricultural shippers for access to more information ...

in order to enforce their right to challenge discriminatory contracts," Brief of Petitioner at 25, n. 16, which is different from the "post-effective date" disclosure which is before us. Therefore, Western Fuels argues that the ICC's "statutory construction" had not "been 'fully brought to the attention of the public and the Congress,'" *United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 2476 n. 10, 61 L.Ed.2d 68 (1979) (citations omitted), for purposes of Congressional ratification. However, we may find legislative ratification where Congress "has amended the statute in other respects" so long as the issue before us "has not escaped public or legislative notice." *Ibid.* Since the issue has been raised before several courts, such as the *WTA* court, it cannot fully have escaped legislative notice.

### 2. Goals of Interstate Commerce Act

Western Fuels asserts that the "procompetitive policies underlying the [ICA] mandate that price and economic terms … be publicly disclosed." Brief of Petitioner at 9. Its argument is based on the statement of policies added to the ICA by the Staggers Rail Act of 1980, Pub.L. 96–448, 94 Stat.1897 and codified at 49 U.S.C. § 10101a, which enumerates specific policies organized around the broad goal of achieving a more competitive rail system. However, the ICC's determination that those broad goals do not supercede a specific provision of the statute (i.e., § 10713) conforms with established principles of statutory interpretation. *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 228–29, 77 S.Ct. 787, 791–92, 1 L.Ed.2d 786 (1957). In addition, the ICC's finding that there is no inconsistency between nondisclosure and the goal of allowing market forces to regulate contract prices is legitimate since the ICC concluded that such disclosure would lead to price collusion rather than greater competition.

Western Fuels' economic arguments in favor of rules requiring disclosure of price terms rely on an article and book by Russell B. Stevenson, "Information and Rivalrous Competition," 48 *Geo. Wash. L. Rev.* 671 (1980) and *Corporations and Information: Secrecy, Access and Disclosure* (1980), to show that publication of price information would increase competition. Relying on the Stevenson works, Western Fuels argues that rail customers are in an uneven bargaining situation, since they only have price information regarding the contract before them whereas the railroads have the benefit of information regarding all of the contracts they have entered into. Western Fuels also argues that the greater the exchange of contract information that takes place, the more competition there will be.

The ICC found that Western Fuels had not produced evidence to show that shippers were in an uneven bargaining position to railroads, since both classes are sophisticated parties who understand the terms and procedures of the contracting process and who over time develop the experience of entering into a number of contracts either with the same or different parties. Central to the dispute between the ICC and Western Fuels is their different conclusions with regard to the effect of disclosure. The ICC determined that the *disclosure* of price information could have anticompetitive effects by "facilitat[ing] the functioning of a price-leadership cartel.…" Ex Parte No. 187, at 10. It took notice that:

> private price negotiation is an important competitive mechanism in certain markets. Where there are relatively few sellers—such as a small number of geographically proximate railroads competing for coal movements—each can be expected to react to moves by the others. Thus, a potential price cut that would automatically become public could lose its attractiveness because of the likelihood of a retaliatory price cut by another road.

*Id.* at 9.

▪ Explaining further its position, the ICC wrote of other possibly adverse consequences of disclosure:

> [T]he prospect of disclosure might lead railroads to negotiate long-term coal contracts with rates less favorable to ship-

pers as a result of their conscious interdependence. Alternatively, railroads might switch solely to the use of contracts qualifying as short-term and, thus, confidential, or they might abandon contracting entirely. *Ibid.* We give great deference to an "agency's predictive judgments about areas that are within the agency's field of discretion and expertise." *Int'l Ladies' Garment Union v. Donovan,* 722 F.2d 795, 821 (D.C.Cir.1983), *cert. denied, Breen v. Int'l Ladies' Garment Union,* 469 U.S. 820, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984). Predictions about the consequences of price disclosure are within the ICC's area of competence and, therefore, merit our deference. *See also Texas,* 730 F.2d at 417 & n. 40.

Western Fuels relies on the case of *Alabama Power Company v. Federal Power Commission,* 511 F.2d 383 (D.C.Cir.1974) to show that price disclosure should be required to equalize the bargaining position of shippers and railroads. In that case, the court distinguished between the disclosure of information only among the firms on one side of the market and the disclosure of information to all market participants and found that disclosure to all participants did not present the risks of possible collusion which accompany one-sided disclosure. The Federal Power Commission ("FPC") had resolved that the benefits of disclosure outweighed any detrimental effects and denied a petition to cut back on disclosure because petitioners had come forward with no evidence of harm even though the disclosure rules had already been promulgated seven months prior to the petition. The reviewing court found the FPC's position to be reasonable and affirmed.

In contrast to the *Alabama Power* case, the ICC here decided that there was evidence that disclosure would have a deleterious effect on railroads and shippers. The ICC quoted in its opinion (Ex Parte No. 187) from the Stevenson article on which Western Fuels heavily relied both before the ICC and this court in which the author analyzed the effects of the mandated disclosure in *Alabama Power:*

Notwithstanding the court's conclusion, and the somewhat puzzling fact that the buyers and sellers both claimed to be harmed by the rule, there may be some validity to the power companies' claims. An attorney for several of the utilities reported that his clients' purchasing positions would suffer as a result of the [ICC's] rule. Their fears have since materialized to some extent. Since the decision, suppliers with whom the utilities have dealt have come to purchase negotiations armed with full information about the power companies' most recent prices, and bargaining has generally begun at those prices and moved upward. Russell B. Stevenson, "Information and Rivalrous Competition," 48 *Geo. Wash.L.Rev.* 671, 689 (1980). The ICC commented that Western Fuels had made no showing that, contrary to the experience of the utilities in *Alabama Power,* there would be beneficial effects from the disclosure it seeks.

■ Several courts have recognized the possible collusive effects of the disclosure of contract price terms in the context of railroad contracts, *WTA,* 722 F.2d at 1032 ("Indeed, it has long been recognized under the antitrust laws that public disclosure of contract terms can undermine competition by stabilizing prices at an artificially high level"); *Alabama Power,* 511 F.2d at 389 n. 10 (D.C.Cir.1974), and in other contexts. *See, e.g., United States v. Container Corp. of America,* 393 U.S. 333, 337, 89 S.Ct. 510, 512, 21 L.Ed.2d 526 (1969). The ICC here determined that the benefits of nondisclosure of price information outweighed any possible detriment. The ICC, therefore, reasonably denied Western Fuels' petition based primarily on an article which did not uniformly support its prodisclosure position. We find, therefore, that the ICC's denial is not arbitrary and capricious, and should be upheld.

B. Compliance with the Procedural Requirements of the Administrative Procedure Act

Western Fuels argues that the ICC failed to comply with the APA in denying the requested rulemaking. In *Wisconsin Elec-*

*tric Power Company v. Costle*, 715 F.2d 323 (7th Cir.1983), we determined that the APA does not apply to requests for rule-makings. Western Fuels argues that the ICC failed even to meet the requirements noted by the *Wisconsin Electric* court that it " '*respond* to the petition' and, in deny-ing the request, 'set forth its reasons.' " *Id.* at 328 (citation omitted) (emphasis in original).

■ However, as we have already dis-cussed, the ICC did respond to Western Fuels' procompetitive arguments but came to a different and equally, if not more, reasonable conclusion about whether disclo-sure would increase price competition. Secondly, Western Fuels argues that the ICC, in denying its request for failing to produce "testimony that the complete dis-closure of the economic terms of a contract has been beneficial" had "placed a burden of proof on Western Fuels that goes far beyond APA requirements." Brief of Peti-tioner at 28. However, the ICC's position that Western Fuels should have come for-ward with more evidence than the Steven-son works is reasonable in light of the fact that it (and several courts) had found that the requested disclosure would likely have anti-competitive effects.

IV. *Conclusion*

Western Fuels has not met its heavy burden under the APA and the ICA to show that a rulemaking should be ordered. The ICC has fulfilled its responsibility to respond and give reasons for the denial of the rulemaking. Western Fuels' petition for review is, accordingly, denied.