# Funding for Technical Assistance for Agricultural Conservation Programs

Funding for technical assistance for the agricultural conservation programs listed in amended section 1241(a) of the Food Security Act of 1985 is subject to the "section 11 cap" on transfer of Commodity Credit Corporation funds.

The Secretary of Agriculture may draw on the Department of Agriculture's appropriation for Conservation Operations to fund technical assistance for these programs.

January 3, 2003

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF MANAGEMENT AND BUDGET

You have asked us to examine the sources and limits on funding for technical assistance provided for agricultural conservation programs listed in amended section 1241(a) of the Food Security Act of 1985. *See* 16 U.S.C. § 3841(a) (Supp. II 2003). That provision instructs the Secretary of Agriculture to "use the funds, facilities, and authorities of the Commodity Credit Corporation [("CCC")] to carry out" these programs. You have asked us to determine (1) whether expenditures on technical assistance for these programs are subject to the annual limit that Congress has placed on aggregate transfers of CCC funds to other components of the Department of Agriculture ("USDA") under section 11 of the Commodity Credit Corporation Charter Act ("CCC Charter Act"), 15 U.S.C. § 714i (2000), and (2) whether the Secretary of Agriculture may draw upon USDA's appropriation for Conservation Operations ("CO") to fund technical assistance for these programs.

Your Office has concluded that the section 11 cap applies to technical assistance expenditures for the conservation programs listed in section 1241(a) and that the Secretary of Agriculture may draw upon USDA's CO appropriation to fund technical assistance for these programs.[1] USDA has concurred in your conclusions on both points.[2] The Congressional Budget Office, addressing only the first point, has also concurred.[3] The General Accounting Office ("GAO"), however, has

---

[1] *See* Letter for Susan A. Poling, Associate General Counsel, General Accounting Office, from Philip J. Perry, General Counsel, Office of Management and Budget (Sept. 16, 2002) ("OMB Letter").

[2] *See* Letter for Susan A. Poling, Associate General Counsel, General Accounting Office, from Nancy S. Bryson, General Counsel, Department of Agriculture (Sept. 16, 2002).

[3] *See* Letter for Senator Tom Harkin, Chairman, Senate Comm. on Agriculture, Nutrition and Forestry, from Nancy S. Bryson, General Counsel, Department of Agriculture (Sept. 24, 2002) (quoting electronic message communicating the Congressional Budget Office's conclusion that the section 11 ceiling remains "applicable to the transfers under section 1241(a)").

reached contrary conclusions: it has determined that the section 11 ceiling does not apply and that the CO appropriation is not available.[4]

For the reasons set forth below, we conclude that the section 11 cap applies to technical assistance expenditures for the conservation programs listed in section 1241(a) and that the Secretary of Agriculture may draw upon USDA's CO appropriation to fund technical assistance for these programs.

## I.

We first address whether the section 11 cap applies to technical assistance expenditures for the conservation programs listed in section 1241(a).

## A.

In legislation enacted in 2002, Congress substantially revised section 1241 of the Food Security Act of 1985 concerning the use of funds transferred from the Commodity Credit Corporation to finance agricultural conservation programs. *See* Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, § 2701, 116 Stat. 134, 278 ("2002 Farm Bill"), *codified at* 16 U.S.C. § 3841 (Supp. II 2003). Revised section 1241(a) instructs the Secretary of Agriculture, during fiscal years 2002 through 2007, to "use the funds, facilities, and authorities of the Commodity Credit Corporation to carry out [seven specified conservation programs] under subchapter IV [of title 16, chapter 58] (including technical assistance)." 16 U.S.C. § 3841(a). For three of the seven specified programs, this authorization to spend CCC funds is not subject to any specific dollar limitation, although acreage and eligibility restrictions place some limit on potential spend-ing.[5] The remaining four, in contrast, are subject to annual spending limits specified in section 1241(a).[6]

---

[4] *See* Letter for Senator Herb Kohl, Chairman, Subcomm. on Agriculture, Rural Development, and Related Agencies, Senate Appropriations Comm., Senator Thad Cochran, Ranking Minority Member, Subcomm. on Agriculture, Rural Development, and Related Agencies, Senate Appropriations Comm., and Representative Henry Bonilla, Chairman, Subcomm. on Agriculture, Rural Development, FDA & Related Agencies, House Appropriations Comm., from Anthony H. Gamboa, General Counsel, General Accounting Office, *Re: Funding for Technical Assistance for Conservation Programs Enumerated in Section 2701 of the Farm Bill*, No. B-291241 (Oct. 8, 2002) (available at http://www.gao.gov) ("GAO Letter").

[5] Sections 1241(a)(1)–(3) instruct the Secretary to use CCC funds, without any dollar-denominated limit, to carry out the Conservation Reserve Program ("CRP"), 16 U.S.C. §§ 3831–3835a (Supp. II 2003); the Wetlands Reserve Program ("WRP"), *id.* §§ 3837–3837e (2000 & Supp II 2003); and the Conservation Security Program ("CSP"), *id.* §§ 3838–3838c (Supp. II 2003).

[6] Sections 1241(a)(4)–(7) instruct the Secretary to use CCC funds, up to prescribed annual limits, to carry out the Farmland Protection Program ("FPP"), 16 U.S.C. §§ 3838h–3838j (Supp. II 2003); the Grassland Reserve Program ("GRP"), *id.* §§ 3838n–3838q; the Environmental Quality Incentives Program ("EQIP"), *id.* §§ 3839aa to 3839aa-9; and the Wildlife Habitat Incentives Program ("WHIP"), *id.* § 3839bb-1.

The 2002 Farm Bill also revised section 1241 to add an express reference to the section 11 limit on the use of CCC funds to meet administrative expenses. Revised section 1241(b) provides that nothing in the new provisions respecting CCC funding "affects the limit on expenditures for technical assistance imposed by section 714i of Title 15 [i.e., section 11 of the CCC Charter Act]." 16 U.S.C. § 3841(b).

The limit on expenditures that is explicitly preserved in this portion of section 1241(b) restricts USDA uses of CCC funds. The CCC, a federal corporation that is located within USDA and managed by a Board of Directors under the supervision of the Secretary of Agriculture, is empowered to obtain funds through borrowing (under a $30 billion line of credit) as well as through direct appropriations from Congress.[7] Section 11 of the CCC Charter Act authorizes the CCC to allot or transfer "to any bureau, office, administration or other agency of the Department of Agriculture . . . any of the funds available to [the CCC] for administrative expenses," 15 U.S.C. § 714i, including funds that the CCC raises through borrowing. In particular, the section 11 cap provides that

> After September 30, 1996, the total amount of all allotments and fund transfers from the Corporation under this section (including allotments and transfers for automated data processing or information resource management activities) for a fiscal year may not exceed the total amount of the allotments and transfers made under this section in fiscal year 1995.

*Id.* According to OMB's figures, section 11 allotments and transfers for administrative expenses during fiscal year 1995 totaled $56 million.

## B.

Your Office and GAO have offered competing textual analyses of the question whether the section 11 cap applies to technical assistance expenditures for the conservation programs listed in section 1241(a). You both agree that the section

---

[7] *See* 15 U.S.C. § 714b(i) (authorizing the CCC to borrow to finance its programs, subject to $30 billion limit on indebtedness). Borrowing from the U.S. Treasury under authority of section 714b(i) represents the principal source of CCC funding. The CCC repays the loans, thereby restoring its borrowing authority, using programmatic revenues (such as loan repayments by commodity producers) and annual appropriations. *See, e.g.*, Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2002, Pub. L. No. 107-76, 115 Stat. 704, 716–17, 729 (appropriating "such sums as may be necessary to reimburse the Commodity Credit Corporation for net realized losses sustained, but not previously reimbursed" and specific amounts for overhead expenses of the commodity export guarantee program). Direct appropriations for certain CCC programs, made available through the normal congressional appropriations process, provide a secondary source of funding. *See generally* General Accounting Office, *Commodity Credit Corporation: Information on the Availability, Use, and Management of Funds*, Rep. No. GAO/RCED-98-114, at 1–2 (Apr. 1998) (describing the CCC's use of "line-of-credit" financing and direct appropriations).

11 cap applies only to allotments and fund transfers made by the CCC under its section 11 authority. The pivotal point on which your Office and GAO disagree is whether section 1241(a) gives the CCC a source of authority, independent of section 11, for funding technical assistance to these programs. GAO maintains that section 1241(a) provides the CCC independent authority; that the technical assistance that the CCC funds for the conservation programs listed in section 1241(a) is pursuant to this independent authority; and that the section 11 cap therefore does not come into play. Your Office, by contrast, maintains that section 11 is the sole source of authority for the CCC to fund technical assistance by USDA entities for farm conservation programs.

We believe that section 1241(a) does not confer on the CCC a source of authority, independent of section 11, for funding technical assistance to the programs listed in section 1241(a). We note in particular that section 1241(a) states that "the Secretary shall use the funds, facilities, and *authorities* of the [CCC] to carry out" these programs. Rather than vesting new authority in the CCC, section 1241(a) thus states plainly that the Secretary of Agriculture shall use the CCC's existing "authorities" to provide technical assistance to these programs. Beyond invoking section 1241(a), GAO does not allege any other authority that the CCC has, apart from section 11, for funding technical assistance to farm programs. Nor are we aware of any such authority that would operate separately from section 11. We therefore determine that insofar as the Secretary is using the CCC's authorities to fund such technical assistance, she is relying on the CCC's section 11 authority.

Our textual analysis is reinforced by section 1241(b), which provides that "[n]othing in [section 1241] affects the limit on expenditures for technical assistance imposed by [section 11]." 16 U.S.C. § 3841(b). Before the 2002 Farm Bill was enacted, the section 11 cap indisputably applied to technical assistance funds provided to at least two of the programs (CRP and WRP) now listed in section 1241(a).[8] If, as GAO contends, the effect of section 1241(a) were to remove technical assistance funding of these two programs from the section 11 cap, it would be highly peculiar to describe this escape from the section 11 cap merely as not "affect[ing] the limit on expenditures for technical assistance imposed by [section 11]." It would be far more natural and straightforward for any

---

[8] We are advised by your Office that under the statutory scheme, including the predecessor version of section 1241, in effect before the 2002 Farm Bill was enacted, OMB and USDA were of the view that (or at least acted as if) transfer of CCC funds for technical assistance for EQIP and WHIP was independently authorized. Whether or not such a view was permissible under the previous statutory scheme, we do not believe that that view should affect our construction of the revised section 1241. It is true that under one canon of construction "Congress is presumed to be aware of an administrative . . . interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change," *Lorillard v. Pons*, 434 U.S. 575, 580 (1978), but that canon plainly does not apply, where, as here, a statute has been revised rather than merely re-enacted. Further, we note that one critical respect in which section 1241 has been revised is the specification that the Secretary shall use the "authorities" of the CCC.

reference to the section 11 cap to state simply that expenditures for technical assistance under section 1241 are not subject to the section 11 cap.

By contrast, section 1241(b) is sensibly phrased under our reading of section 1241(a). With respect to four of the seven programs that it lists, section 1241(a) sets forth specific amounts, totaling in the hundreds of millions of dollars each fiscal year, that the Secretary is to spend. Because section 1241(a) makes clear that the funds expended may be for purposes "including the provision of technical assistance," section 1241(a), read in isolation, might suggest that, irrespective of section 11, any portion of these hundreds of millions of dollars could be used for technical assistance. Section 1241(b) instead succinctly makes clear that the section 11 cap continues to apply.

We therefore conclude that the section 11 cap applies to technical assistance expenditures for the conservation programs listed in section 1241(a).[9]

## II.

We now consider whether the Secretary of Agriculture may draw upon USDA's CO appropriation to fund technical assistance for the programs listed in section 1241(a).

## A.

Public Law 107-76 contains the fiscal year 2002 appropriation for the CO account. It provides in relevant part:

> For necessary expenses for carrying out the provisions of the Act of April 27, 1935 (16 U.S.C. 590a–f), including preparation of conservation plans and establishment of measures to conserve soil and water (including farm irrigation and land drainage and such special measures for soil and water management as may be necessary to prevent floods and the siltation of reservoirs and to control agricultural related pollutants); operation of conservation plant materials centers; classification and mapping of soil; dissemination of information; acquisition of lands, water, and interests therein for use in the plant materials program by donation, exchange, or purchase at a nominal cost not to exceed $100 pursuant to the Act of August 3, 1956 (7 U.S.C. 428a); purchase and erection or alteration or improvement of permanent and temporary buildings; and operation and maintenance of aircraft, $779,000,000, to remain available until ex-

---

[9] GAO argues that the legislative history of the 2002 Farm Bill supports its reading of section 1241(a). Because we do not believe that GAO's reading is permitted by the text of section 1241(a), we need not consider its account of the legislative history. *See, e.g.*, *Barnhill v. Johnson*, 503 U.S. 393, 401 (1992).

pended (7 U.S.C. 2209b), of which not less than $8,515,000 is for snow survey and water forecasting, and not less than $9,849,000 is for operation and establishment of the plant materials centers, and of which not less than $21,500,000 shall be for the grazing lands conservation initiative . . . .

115 Stat. at 717. This same authority for the CO appropriation applies to the continuing appropriations for fiscal year 2003. *See* Pub. L. No. 107-229, §§ 101(1), 103, 116 Stat. 1465–66 (providing continuing appropriations for fiscal year 2003); Pub. L. No. 107-294, 116 Stat. 2062 (extending continuing appropriations through January 11, 2003).

**B.**

GAO maintains that the CO appropriation identifies the specific programs that it is available to fund and that it does not include the programs listed in section 1241(a). It also argues that section 1241(a)'s directive that "the Secretary shall use the funds, facilities, and authorities of the [CCC] to carry out the [listed] programs" should be read to preclude the Secretary from using other funds in support of these programs. GAO contends that both a Senate floor colloquy on the 2002 Farm Bill and the history of funding of the WRP support its position. *See* GAO Letter at 8–11.

Your Office maintains instead that the CO appropriation is sufficiently broad to authorize funding technical assistance for the conservation programs listed in section 1241(a). You argue further that the legislative history of the CO appropriation supports your reading. *See* OMB Letter at 2–4. You find further support in what you characterize as USDA's "longstanding regular practice of using the CO account to fund conservation technical assistance." *Id.* at 4.

We believe that the CO appropriation may be used to fund technical assistance for the conservation programs listed in section 1241(a). The CO appropriation provides funds "for carrying out the provisions of the Act of April 27, 1935 (16 U.S.C. 590a–f)." Although the programs listed in section 1241(a) are not specifically identified in 16 U.S.C. §§ 590a–590f (2000), section 590a(3) authorizes the Secretary to "cooperate or enter into agreements with, or *to furnish financial or other aid to, any agency*, governmental or otherwise, or any person, subject to such conditions as he may deem necessary, *for the purposes of this chapter* [(chapter 3B)]." *Id.* § 590a(3) (emphasis added). Further, the express purposes of chapter 3B include

> (1) preservation and improvement of soil fertility; (2) promotion of the economic use and conservation of land; (3) diminution of exploitation and wasteful and unscientific use of national soil resources; (4) the protection of rivers and harbors against the results of soil ero-

> sion in aid of maintaining the navigability of waters and water cours-
> es and in aid of flood control; . . . [and] (6) prevention and abatement
> of agricultural-related pollution.

*Id*. § 590g(a) ("declar[ing] . . . the purposes of this chapter"). Therefore, insofar as the Secretary determines that providing technical assistance for the conservation programs listed in section 1241(a) would serve any of these purposes, she may use the CO appropriation to fund such technical assistance.

We do not read section 1241(a)'s directive that "the Secretary shall use the funds, facilities, and authorities of the [CCC] to carry out the [listed] programs" to foreclose the Secretary from using the CO appropriation to fund technical assistance for these programs. Section 1241(a) does not state that the Secretary shall use *only* the funds, facilities, and authorities of the CCC to carry out these programs. In short, we see no statutory bar to the Secretary's using other funds, in addition to the CCC's, to carry out these programs.

Because we believe that the text of the CO appropriation clearly authorizes the Secretary to use the CO account to provide technical assistance for the conservation programs listed in section 1241(a) to promote any of the purposes of chapter 3B, we need not address the competing legislative history arguments that your Office and GAO present. Likewise, we see no reason to explore the conflicting accounts of the history of funding of the listed programs: even if GAO is correct in its assertion that the WRP was not funded out of the CO appropriation before the predecessor version of section 1241 was enacted in 1996, that would not bear meaningfully on the question whether the CO appropriation could have been used to fund WRP.

### III.

In sum: The section 11 cap applies to technical assistance expenditures for the conservation programs listed in section 1241(a). The Secretary of Agriculture may draw upon USDA's CO appropriation to fund technical assistance for these programs.

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*