OPINION OF THE COURT
CHAGARES, Circuit Judge.
The plaintiffs appeal from the District Court’s order dismissing their complaint. We will affirm.
I.
Because we write solely for the benefit of the parties, we will recite only the essential facts.
*241 An alien seeking to attend school in the United States may apply for “F-l” status — and, if granted, may reside lawfully in the country — for as long as he is a full-time student. After he completes his academic program, he can maintain F-l status for a limited time while engaging in employment directly related to his field of study, called “optional practical training” (“OPT”). After OPT ends, the student has a short grace period in which to arrange for a new method of remaining in the United States or, failing that, to leave it.
One popular method of remaining in the country is obtaining “H-1B” status in connection with anticipated future employment in a technical field requiring advanced study. To obtain H-1B status, the prospective employer files a petition on the student’s behalf. If the petition is granted, the F-l student can be present in the country for up to six years from the date that employment begins. Congress caps the number of individuals who may assume H-1B status each year. The application timetable, however, causes the average student to have a gap between the expiration of his F-l status and the commencement of his H-1B status.
Prior to April 8, 2008, the Department of Homeland Security (“DHS”) limited OPT to 12 months. Also, a student whose F-l status had expired but whose H-1B petition was pending was not entitled to remain in the country while it was being considered. On April 8, 2008, DHS, citing its authority pursuant to the Immigration and Nationality Act of 1952 (“INA”), issued an interim final rule (“IFR”) addressing these issues. The IFR extends OPT to 29 months for students in science, technology, engineering, or mathematics (the so-called “STEM” fields). It also allows an F-l student with a pending H-1B petition to remain in the country until the petition is formally ruled upon and, if ultimately granted, until he begins work.
The Administrative Procedure Act (“APA”), 5 U.S.C. § 553(b), (d), provides that an agency normally must give public notice of a proposed rulemaking, solicit comments from interested persons, and, once the rule is ultimately issued, wait 30 days before enforcing it. DHS invoked a statutory “good cause” exception allowing it to skip these steps and declare the IFR effective immediately, on the ground that any delay was “impracticable, unnecessary, or contrary to the public interest.” DHS found that STEM fields were experiencing a severe labor shortage, and it estimated that the IFR would allow over 40,000 STEM students, who otherwise would have to leave the country, to remain in the United States and help alleviate the shortage.
A handful of domestic workers in or about to enter the STEM job market, and organizations representing them and others similarly situated, filed a complaint in federal court seeking to invalidate the IFR. Invoking the APA’s judicial-review provision, 5 U.S.C. § 702, they claimed that, in issuing the IFR, DHS exceeded the scope of its INA authority, acted arbitrarily and capriciously, and failed to justify its use of the “good cause” exception to full-blown rulemaking procedure. The plaintiffs allege that the rule has harmed them by increasing the supply of workers who compete with them for jobs, forcing wages down, prompting employers to replace non-OPT workers with OPT workers, and causing employers to fill open positions only with OPT workers.
DHS filed a motion to dismiss for lack of standing pursuant to Fed.R.Civ.P. 12(b)(1), and, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The District Court granted the motion, holding that the *242 plaintiffs lacked standing and that their claims were meritless as a matter of law. The plaintiffs then filed this appeal.
II.
The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346. We have jurisdiction pursuant to 28 U.S.C. § 1291.
To maintain an action in federal court, a plaintiff must demonstrate constitutional standing by satisfying several requirements imposed by Article III of the Constitution. See Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137-38 (3d Cir. 2009) (outlining Article Ill’s “irreducible constitutional minimum”). The plaintiff must also demonstrate prudential standing by meeting certain judge-made requirements designed to limit the exercise of federal jurisdiction. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004).
Particularly relevant to this case, the plaintiff, to establish prudential standing, must demonstrate that the interest it seeks to protect “is arguably within the zone of interests to be protected ... by the statute ... in question.” Ass’n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (discussing zone-of-interests test in context of APA challenge to agency action). The “statute ... in question” encompasses more than just the provision allegedly violated by the administrative action. It also includes other provisions having an “integral relationship” to that provision. Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 530, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991). The “integral relationship” requirement should not be applied too rigidly, see Davis v. Phila. Housing Auth., 121 F.3d 92, 98 n. 8 (3d Cir.1997), but it also should not be applied so loosely — such as by deeming each section of an act “integrally related” to all other sections — as to render it meaningless, Air Courier Conference, 498 U.S. at 529-30, 111 S.Ct. 913. Factors to consider in determining whether two provisions in an act are integrally related include whether both provisions address similar subject matter, whether legislative history reveals that they share a common purpose, and whether they are located in a common section or subsection of the act. See Fed’n for Am. Immig. Reform v. Reno, 93 F.3d 897, 903-04 (D.C.Cir.1996) (discussing “integral relationship” analysis).
After the court identifies the “statute ... in question,” it must determine whether the plaintiffs interests “arguably fall within the zone of interests to be protected” by it. This determination, like the “integral relationship” analysis, is “not meant to be especially demanding.” Clarke v. Sec. Indus. Ass’n, 479 U.S. 388, 399-400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). The plaintiff need not show that Congress intended him, in particular, to benefit from the provisions. Id. But, he must show that his interests are more than “marginally related to ... the jmrposes implicit in the statute.” Id.
III.
A.
The plaintiffs argue that the relevant statute is the entire INA. The Supreme Court has squarely disallowed such a kitchen-sink approach, however, and requires litigants to identify the relevant provisions with some particularity. See Air Courier Conference, 498 U.S. at 529-30, 111 S.Ct. 913.
The relevant provision here is the one the plaintiffs allege DHS actually violated: 8 U.S.C. § 1101(a)(15)(F)(i), defining F-1 status. It states that an alien “who seeks to enter the United States temporarily and *243 solely for the purpose of pursuing [] a course of study” at a DHS-approved educational institution is deemed a “non-immigrant.” Subsequent provisions allow the Attorney General to admit such non-immigrants into the country.[1]
B.
The plaintiffs claim that they were and continue to be injured by F-l STEM students who, instead of leaving the country after 12 months of OPT, remain in the country by taking on additional OPT and filing an H-1B petition. Those F-l students compete with the plaintiffs for STEM jobs. Absent the IFR, those students would be forced to return to their home countries after 12 months of OPT and would not threaten the plaintiffs’ job prospects. Yet, perhaps because they viewed the relevant statute as the entire INA, the plaintiffs never argue precisely why this injury arguably falls within the zone of interests protected by § 1101(a)(15)(F)(i) in particular. We hold that this injury does not fall within that zone, and, therefore, that the plaintiffs lack prudential standing.
The Court of Appeals for the District of Columbia Circuit’s opinion in Federation for American Immigration Reform addresses the application of the zone-of-interests test in the context of a limitation on the Attorney General’s ability to allow aliens to enter the country and supports our determination that the STEM workers fail the zone-of-interests test in this case. In 1994, the Government entered into an agreement with Cuba whereby it would admit at least 20,000 Cubans per year as legal immigrants. 93 F.3d at 899. The Attorney General decided to help achieve this goal by “paroling” several thousand Cubans each year and then permitting *244 them to apply for lawful permanent resident status. Id. A coalition of Miami residents filed suit, alleging that this decision violated the parole statute, § 1182(d)(5)(A), which provides:
The Attorney General may ... in his discretion parole into the United States temporarily ... for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purpose of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled....
Specifically, the residents alleged that the Attorney General was using parole effectively to admit the aliens (rather than allow them to be present temporarily), a practice the statute expressly prohibits. 98 F.3d at 900. They asserted that the unlawfully-paroled Cubans were damaging them employment prospects by entering the job market and providing additional competition. Id. at 903.
The court of appeals held that this injury did not arguably fall within the zone of interests protected by the parole statute. Id. at 903-04. It rejected the Miami residents’ argument that harm to job prospects is within the zone of interests protected by immigration laws under International Union of Bricklayers & Allied Craftsmen v. Meese, 761 F.2d 798 (D.C.Cir.1985), a case where the court held that domestic workers’ interest in limiting competition in the job market generated by an influx of alien laborers fell within the zone of interests protected by a provision of the INA. In that case, the plaintiffs alleged a violation of what is now § 1182(a)(5)(A)(i), a provision requiring the Secretary of Labor to certify that “the employment of such aliens will not adversely affect the wages and working conditions of workers in the United States similarly employed.” The Federation for American Immigration Reform court observed that the parole statute, in contrast, contained no such language. See 93 F.3d at 903.
This suggests that the plaintiffs here, too, fail to meet the zone-of-interests test. Like the parole statute at issue in Federation for American Immigration Reform, the F-1 status provision contains no language conditioning entry into the United States on noninterference with domestic labor conditions. Furthermore, at least since 1947, federal agencies dealing with immigration have interpreted § 1101(a)(15)(F)(i) to allow a student to engage in on-the-job training to supplement his in-the-classroom training. See 8 C.F.R. § 125.15(b) (1947). Yet, each time Congress has re-enacted § 1101(a)(15)(F)(i) — including October 10, 2008, see Pub.L. No. 110-391, § 2(a)-(b), 122 Stat. 4193, 4193-94 (2008) (amending § 1101(a) but leaving subsection (15)(F)(i) intact), six months after DHS issued the IFR- — it has chosen not to add language mandating that those OPT students not adversely affect similarly-employed domestic workers. This provides further evidence that protection of domestic workers was not among Congress’s concerns in enacting and re-enacting the F-l status provision, and it tends to suggest that Congress- — like DHS in issuing the IFR — was concerned with increasing the country’s pool of available STEM workers. See Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (“Congress is presumed to be aware of an administrative ... interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.”). That Congress has over the years chosen to include such language in defining other categories of non-immigrants, see § 1101(a)(15)(Q) (defining as non-immigrant “an alien coming temporarily ... to the United States as a *245 participant in an international cultural exchange program ... for the purpose of providing practical training, employment, and the sharing of the history, culture, and traditions of the country of the alien’s nationality and who will be employed under the same tuages and working conditions as domestic workers,” thereby preventing such an alien from undercutting domestic workers’ salary demands) (emphasis added), reinforces this conclusion.
In sum, case law and our own examination of Congress’s treatment of the F-1 status provision lead us to hold that the plaintiffs’ injury does not fall within the zone of interests protected by § 1101(a)(15)(F)(i).
IV.
For the reasons mentioned above, we will affirm the District Court’s order dismissing the complaint pursuant to Rule 12(b)(1).[2]

. For the first time on appeal, the plaintiffs identify two other potentially relevant INA provisions: § 1182(a)(5)(A)(i) and (n)(1)(A). The first, § 1182(a)(5)(A)(i), states:
Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified ... that ... the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.
The second, § 1182(n)(1)(A), requires an employer filing an H-1B petition on an alien's behalf to include such a certification in the application.
Resort to these labor-certification provisions fails for two reasons. First, the plaintiffs failed to bring these provisions to the attention of the District Court. Therefore, we need not consider them on appeal. See Common Cause v. Pennsylvania, 558 F.3d 249, 263 (3d Cir.2009) (explaining that even though this Court has an obligation to determine whether the plaintiff had standing in the district court, "[a] litigant generally cannot create standing through new allegations raised for the first time on appeal”).
Second, even if we were to entertain these arguments, we would hold that the labor-certification provisions are not ‘'integrally] relatfed]” to the F-1 status provision within the meaning of Air Courier Conference and therefore do not enter into our zone-of-interests analysis. The provisions address different subjects. The F-1 status provision addresses eligibility to enter the country to study, whereas the labor-certification provisions address eligibility to enter the country to work. True, OPT employers often arrange for F-1 students to become H-1B workers, but F-1 status is neither necessary nor sufficient to obtain H-1B status. The plaintiffs point to no legislative history linking the purpose of the labor-certification provisions with the purpose of the F-1 status provision. In addition, the labor-certification provisions are located in an INA subsection different from that containing the F-1 status provision. See Fed’n for Am. Immig. Reform, 93 F.3d at 903-04 (holding INA immigration quota provision not ”integral[ly] relatfed]" to INA provision allowing Attorney General to parole aliens into the country for a limited time because the two provisions addressed different subject matter, no legislative history linked the purpose of one provision with the purpose of the other, and the provisions were located in different subsections of the INA).

. Because we will affirm the District Court’s order for lack of prudential standing, we express no opinion on the District Court’s resolution of the other issues in this case, namely constitutional standing and the merits of the plaintiffs' substantive challenges.